[No. 30359-7-I.   Division One.   April 19, 1993.]

THOMAS O. SELLSTED, *Appellant*, v. WASHINGTON MUTUAL SAVINGS BANK, *Respondent*.

*Jane Goodman* and *Jon Rosen,* for appellant.

*Steven Winterbauer* and *Robert Riley,* for respondent.

AGID, J. — Thomas O. Sellsted appeals from a summary judgment order entered against him on his age discrimination claim. He contends that summary judgment was improper because genuine issues of material fact exist as to his

job performance and the circumstances surrounding his discharge. We reverse and remand for trial.

Thomas O. Sellsted was hired by Washington Mutual Savings Bank (Washington Mutual) as vice-president in charge of its Small Business Administration loan program at the Preston Ridge subsidiary in 1981. At the time, he had 26 years' experience in the banking industry. In 1983, Sellsted was transferred to Washington Mutual's commercial real estate lending department (CRE) at its main branch in Seattle where he worked as a loan officer until his discharge on August 21, 1989. At the time of his discharge, Sellsted was 57 years old. All Sellsted's annual written performance evaluations from 1983 through 1988 indicate that his work consistently exceeded the standards set for his position.[1]

In early 1988, Sellsted prepared a loan summary for a loan to purchase a nursing home. It was approved by the loan committee to which such summaries were submitted. The borrower thereafter modified the property and sought a new loan based on the expanded facility. In August 1988, Sellsted outlined that proposal to the loan committee, which approved the preparation of a second loan summary. In February 1989, the CRE department reviewed and endorsed the loan summary prepared by Sellsted for the expanded nursing facility. At the loan committee meeting on February 27, however, the committee requested that Sellsted obtain additional information and resubmit the loan request after those revisions had been incorporated into the loan summary. This was in part due to new departmental standards and expecta-

---

[1]The evaluations contain a number of comments that reflect very favorably on Sellsted's performance. For example, his last written evaluation in the fall of 1988 includes comments that "[o]ver the past twelve months Mr. Sellsted has had excellent success in loan origination and production" and "Mr. Sellsted performs his assigned tasks in an outstanding manner." The evaluation was prepared by Sellsted's immediate supervisor, Robert Flowers, and reviewed by the chair of the loan committee, Kerry Killinger. These evaluations were not part of the original record before the trial court, but were among the documents submitted in support of Sellsted's motion for reconsideration which were stricken by the trial court. See page 857. The record before the trial court on the initial summary judgment motion, however, included Sellsted's affidavit which accurately described these evaluations.

tions implemented by Lee Lannoye.[2] Sellsted met with Lannoye to discuss those revisions on March 1, 1989. The revised nursing home loan summary was presented to the loan committee on March 20, and was approved. Other bank employees testified that the loan has since performed trouble free.[3]

On March 13, 1989, Sellsted was one of three CRE employees, all over 40, who were issued 90-day probation notices.[4] At Sellsted's request, he again met with Lannoye on or about March 30. Sellsted testified that Lannoye simply reiterated at that meeting what he had said at their March 1 meeting. According to Lannoye's own testimony, other than indicating to Flowers that he was still not persuaded that Sellsted was meeting his standards, Lannoye took no further steps after the March 30 meeting to meet with Sellsted or otherwise inform him of his ongoing concerns about the quality of his work.

After the March 30 meeting, Sellsted completed a writing course, and all of his loan summaries submitted after February 27 were approved. In May 1989, Sellsted's immediate supervisor, Robert Flowers, complimented him on a loan summary presentation, telling him it was excellent.[5] Lan-

---

[2]Mr. Lannoye had been hired as senior CRE manager in December 1988 and thereafter assumed Kerry Killinger's position as loan committee chair. He communicated the revised standards orally over a period of time at a number of meetings, mostly in the form of criticism of loan summaries after they had been submitted. Washington Mutual concedes that many people initially had difficulty meeting Lannoye's new standards and were counseled regarding their performance.

[3]According to Lannoye's own testimony, at the time Sellsted was terminated, none of the loans Sellsted originated in 1988 or 1989 was in default. Washington Mutual learned in 1990 that one borrower was in bankruptcy. It had defaulted on one loan Sellsted originated, as well as on other loans it had obtained through different loan officers at Washington Mutual. Since none of Sellsted's loans was in default at the time of his termination, this was obviously not a basis for the bank's decision. However, the performance of his loans is relevant to Sellsted's claim that his performance was satisfactory.

[4]One employee over 50 and one age 30 were not placed on probation.

[5]Washington Mutual contends that in May 1989, Flowers told Sellsted that Lannoye still had concerns about his work, citing to Clerk's Papers, at 270. This

noye confirmed that Flowers had approached him at the time, suggesting that Sellsted's probation period end. He also acknowledged that Sellsted made an effort to improve and that subsequent loan summaries submitted by Sellsted were satisfactory. Sellsted's probation expired of its own terms in June 1989. Thereafter, Sellsted was selected to participate in a management training program, and his attendance at the Western Regional Mortgage Banker's Conference in Sun Valley in July 1989 was paid for by Washington Mutual.

On August 21, 1989, Lannoye informed Sellsted that he was terminated as of that date. Sellsted testified that Lannoye explained the termination as part of a work force reduction. However, the written termination notice listed "redefinition of job responsibilities requires greater knowledge and experience" as the reason for termination. In response to the concern of another loan officer, Marvin Leach, that Sellsted had been terminated because of his age, Lannoye responded that the issue was not one of age but of competence.[6] Lannoye states in his declaration that his lack of confidence in Sellsted's abilities stemmed largely from his "poor performance" on the February nursing home loan submission.

After Sellsted's discharge, Washington Mutual hired Neil Maris, age 33, as a CRE loan officer to perform the same duties that Sellsted had performed. When Maris was rehired

citation does not support the bank's contention. In the Clerk's Papers, at 270 there is only a copy of the same list of criticisms of appellant's citations to the record that is attached as appendix A to respondent's brief. Nor are the deposition page numbers helpful. Only selected pages of the deposition are included in the record, and the page cited (page 127) is not among them. Similarly, respondent's contention at page 30 of its brief that the performance of other employees improved appreciably is not supported by any citation to the record, nor is it supported by the citation appearing in the brief at the end of the following sentence.

[6]Neil Maris, who was hired to replace Sellsted, testified that Marvin Leach was not the only individual who expressed concern that Sellsted and other bank employees, who were not identified by name, had been terminated because of their age. He also heard such concerns expressed by Carol Balder, the loan closer for the CRE department. Both Leach and Balder believed they were also vulnerable because of their age.

by a previous employer 10 months later, the vacancy was filled by Jeff Morgan, age 37, a trainee who had no previous CRE lending experience.

Sellsted thereafter filed this action alleging that his discharge violated RCW 49.60, which prohibits discrimination based on age. After discovery was completed, Washington Mutual moved for summary judgment on the ground that Sellsted's allegations were nothing more than unsupported speculation. Included among the documents submitted in Sellsted's response to that motion was the affidavit of a third party witness, Ronald L. Bozarth.[7] The trial court granted Washington Mutual's motion to strike both Bozarth's affidavit and one sentence of Sellsted's affidavit. It then granted Washington Mutual's motion for summary judgment. In support of his motion for reconsideration, Sellsted submitted an additional excerpt from his deposition testimony and additional documents to substantiate his earlier affidavit, some of which Washington Mutual moved to strike on the ground that they did not constitute "newly discovered evidence". The trial court granted the motion to strike most of the documents and denied Sellsted's motion for reconsideration. This appeal followed.

On an appeal from summary judgment, the appellate court engages in the same inquiry as the trial court, construing the facts and reasonable inferences therefrom in the manner most favorable to the nonmoving party to ascertain whether there is a genuine issue of material fact. *DeLisle v. FMC Corp.*, 57 Wn. App. 79, 82, 786 P.2d 839, *review denied*, 114 Wn.2d 1026 (1990). In an action brought under RCW 49.60.180, which prohibits age discrimination in employment, the employee has the initial burden of presenting a prima facie case of age discrimination. *Roberts v. ARCO*, 88 Wn.2d 887, 892, 568 P.2d 764 (1977); *Hatfield v. Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 880, 790 P.2d 1258 (1990).

---

[7]Bozarth is an expert in the CRE lending field who is familiar with Sellsted's work. His affidavit was submitted to rebut testimony by bank personnel that Sellsted did not inspire confidence in his judgment and expertise as an underwriter.

To make out a prima facie case of age discrimination, an employee must show that: (1) he or she was within the statutorily protected age group; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a younger person. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 362, 753 P.2d 517 (1988) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)).[8]

Sellsted met this burden. At 57, he was within the protected age group.[9] He was discharged and replaced by a younger person.[10] Sellsted's claim that he was doing satisfactory work at the time he was discharged,[11] while disputed by Washington Mutual, is supported by the evidence he produced at the summary judgment hearing. This includes his laudatory annual written performance evaluations for the years 1983 through 1988; loan committee approval under the new standards of all loan summaries he submitted after February 27; the lack of any criticism, warnings or counseling between March 31 and August 21 when he was discharged; his immediate supervisor's statement that he did an excellent job in May and suggestion that the probationary period be terminated early; the automatic expiration of his probationary period; and Lannoye's own testimony that he considered the loan summaries Sellsted prepared after the nursing home loan summary satisfactory. This evidence

---

[8]The elements of a prima facie case of age discrimination under Washington law are substantially the same as those established by federal decisions under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.* (1976). *Douchette v. Bethel Sch. Dist. 403*, 117 Wn.2d 805, 814, 818 P.2d 1362 (1991). Federal law developed under the ADEA is persuasive authority in age discrimination cases brought under RCW 49.60. *Roberts*, 88 Wn.2d at 892.

[9]RCW 49.44.090.

[10]Washington Mutual concedes that Neil Maris, age 33, was hired to assume Sellsted's former position and that 10 months later, the position was filled by a 37-year-old trainee.

[11]Sellsted acknowledges that he was criticized for the February nursing home loan summary and, along with others, was placed on probation. He does not concede that his work was unsatisfactory.

was sufficient to enable Sellsted to meet his initial burden of establishing a prima facie case.[12]

The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge, *i.e.*, to produce evidence to show that the employee was discharged for reasons other than his age. *Grimwood*, 110 Wn.2d at 364; *Roberts*, 88 Wn.2d at 892. Washington Mutual relies on the problems with the February nursing home loan summary and Sellsted's asserted inability to meet the new, more exacting standards as the reason for his termination. It asserts that, based on the deficiencies in the nursing home loan summary, Sellsted's superiors lost confidence in his ability to perform, and that confidence was never regained. The bank also relies on its assertion that Flowers told Sellsted in May that Lannoye still had concerns about his work,[13] concerns which apparently remained until his termination. Sellsted testified that Washington Mutual also told him at different times that his termination was a result of a reduction in force and his inability to discharge his redefined job responsibilities. If not rebutted, any of these reasons standing alone could meet Washington Mutual's burden of articulating a legitimate nondiscriminatory reason for Sellsted's termination.

Once the employer meets its burden, the employee resisting summary judgment must produce evidence that raises a genuine issue of material fact on the question of whether the reasons given by the employer for discharging the employee are unworthy of belief[14] or that they are a mere pretext for

---

[12]As the court held in *deLisle* on much less evidence, these favorable opinions together with the employee's consistent record of good evaluations alone "preclude summary judgment", even in the face of a legitimate nondiscriminatory reason for the discharge. 57 Wn. App. at 85.

[13]This assertion is not supported by the record. See footnote 5.

[14]The employee can show that the employer's proffered reason is unworthy of credence or belief in three ways: "(1) the company's reasons have no basis in fact; or (2) if they have a basis in fact, by showing that they were not really motivating factors; or (3) if they are factors, by showing they were jointly insufficient to motivate the adverse employment decision, [*e.g.*], the proffered reason was so removed in time that it was unlikely to be the cause or the proffered reason

what is in fact a discriminatory purpose. *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 252, 256, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); *Grimwood*, 110 Wn.2d at 364; *Hatfield*, 57 Wn. App. at 880. To meet this burden, however, an employee is not required to produce evidence beyond that already offered to establish a prima facie case. *Burdine*, 450 U.S. at 255 n.10; *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 640 (5th Cir. 1985). Nor is direct ("smoking gun") evidence required. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir.), *cert. denied*, 484 U.S. 979 (1987). Circumstantial, indirect and inferential evidence will suffice to discharge the plaintiff's burden. *Burdine*, 450 U.S. at 256; *TWA, Inc. v. Thurston*, 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 791 (3d Cir. 1985), *cert. denied*, 474 U.S. 1057 (1986). This is because, as this court recently noted in *deLisle*, "employers infrequently announce their bad motives orally or in writing." 57 Wn. App. at 83. The ultimate issue in an age discrimination case is whether age was *a determining factor* in the employer's decision to terminate an employee. *Hatfield*, 57 Wn. App. at 882. While retaining the ultimate burden of persuasion at trial, the employee's task at the summary judgment stage is limited to showing that a reasonable trier of fact could, but not necessarily would, draw the inference that age was a determining factor in the decision. *DeLisle*, 57 Wn. App. at 83. He must meet his burden of production to create an issue of fact but is not required to resolve that issue at the summary judgment stage. *Carle v. McChord Credit Union*, 65 Wn. App. 93, 101 n.11, 827 P.2d 1070 (1992); *deLisle*, 57 Wn. App. at 83. For these reasons, summary judgment in favor of employers is often inappropriate in employment discrimination cases. *DeLisle*, 57 Wn. App. at 83-84 (citing *Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir. 1987), *cert. denied*, 488 U.S. 1004 (1989)).

---

applied to other employee[s] with equal or greater force and the company made a different decision with respect to them." *Grabb v. Bendix Corp.*, 666 F. Supp. 1223, 1244 (N.D. Ind. 1986).

In the face of Washington Mutual's evidence, outlined above, Sellsted's evidence establishing a prima facie case and his evidence of pretext together were sufficient to create a genuine issue of material fact as to the reason for his discharge. *See deLisle*, 57 Wn. App. at 85. The following additional evidence supported Sellsted's claim that Washington Mutual's reasons for terminating him were either not credible or a pretext for discrimination: (1) although others also had difficulty adjusting to the new standards, only employees within the protected age group were placed on probation, and the younger employees simply received individual counseling; (2) the CRE department employees whose work Lannoye was instructed to specially scrutinize were all within the protected age group; (3) Sellsted was quickly replaced by a newly hired individual; and (4) Sellsted's replacement had the same job responsibilities he had performed. The speed with which he was replaced supports the inference that the work force reduction rationale was both unworthy of credence and pretextual.[15] Similarly, the identity of job responsibilities and Lannoye's admission that Sellsted's performance after March 31 was satisfactory logically support the inference that the "redefinition of job responsibilities" and competence rationales were also a pretext and unworthy of belief. The focus of probation and increased scrutiny on employees within the protected group raises the inference that age played a part in the decision.

In addition, the fact that there were multiple incompatible reasons given for Sellsted's termination further suggests that none of the reasons given was the real reason, and thus also raises the inference that those reasons are pretextual and unworthy of belief. At this stage, it is not for the trial court to resolve these inconsistencies but rather to recognize that they create material issues of fact as to the real reason for the discharge. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d

[15]Washington Mutual points to the fact that it was considering eliminating the entire CRE department. However, because it did not do so and immediately replaced Sellsted with a 33-year-old employee, this fact is irrelevant to the discrimination issue.

893, 900-01 (3d Cir.) (en banc), *cert. dismissed*, 483 U.S. 1052 (1987). As the *Chipollini* court stated:

> In the context of the summary judgment motion, however, the court should have considered whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably *could* support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence *necessarily* leads to that [*sic*] conclusion that the employer did act for discriminatory reasons. *Graham v. F.V. Leopold Co.*, 779 F.2d 170, 172-73 (3d Cir. 1985).

814 F.2d at 900.

The rationale for this rule goes back to the fundamental assumption on which the shifting burdens of production in discrimination cases is based — that employers act for a reason, and one that is not "totally arbitrary".

> A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. See *Teamsters v. United States*, [431 U.S. 324,] 358 n. 44 [52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977)]. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978).

In the summary judgment context, this translates into a requirement that the plaintiff create an issue of fact calling into question the otherwise legitimate reasons proffered by the employer. This is, as we indicated above, because the employee's burden at this stage in the proceedings is only to produce sufficient evidence, including that adduced to support his prima facie case, to raise a genuine issue of material fact. Where, as here, the record contains "reasonable but competing inferences of . . . discrimination" because the employer's reasons have been called into question both by the conflicts among the reasons themselves and by evidence

rebutting their accuracy or believability, "it is the jury's task to choose between such inferences." *Carle*, 65 Wn. App. at 102 (citing *United States v. Stanley*, 928 F.2d 575, 577 (2d Cir.), *cert. denied*, 112 S. Ct. 141 (1991)).

The Third Circuit explained the difference in its en banc decision in *Chipollini*:

> The issue of the defendant's intent at the time of the plaintiff's discharge is clearly a factual question. The Supreme Court recently reaffirmed Lord Justice Bowden's treatment of the problem a century ago:
>
> "The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else." *Edgington v. Fitzmaurice*, 29 Ch. Div. 459, 483 (1885).
>
> [*United States Postal Serv. Bd. of Governors v.*] *Aikens*, 460 U.S. [711,] 716-17, [75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983)]. Thus, by pointing to evidence which *calls into question* the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.
>
> A defendant which is less than honest in proffering its reason for discharge risks an unnecessary age discrimination verdict. As we indicate above, the *McDonnell Douglas* test is based on the Supreme Court's assumption that "when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer . . . based his decision on an impermissible consideration such as [age]." *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2950. If the plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reason, then the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent in accordance with the *Aikens* standard.

(Italics ours.) 814 F.2d at 899.

The three performance-related reasons offered by Washington Mutual for discharging Sellsted were not only inconsistent; they were also disputed.[16] Sellsted disputes the assertion

---

[16]We do not agree with Washington Mutual that the rationales are the same. At oral argument, the bank relied primarily on Sellsted's performance on the nursing home loan summary. This event occurred 6 months before his discharge and after 6 months of satisfactory performance following correction and approval of that summary. When it discharged Sellsted, the bank relied on an alleged change in his job responsibilities which was not explained on the termination form. Lannoye

that his performance was unsatisfactory and offers independent proof of his position. He also offers indirect evidence to support a finding of pretext as defined by the Supreme Court and the other federal courts cited above. Because the bank relies on subjective reasons to support Sellsted's discharge, the issue must be resolved by a finder of fact who can evaluate the credibility of the bank's and Sellsted's witnesses in the context of his indirect evidence of pretext. If the factfinder determines that the proffered reasons — alone, together or because they conflict — are not credible, the presumption of an impermissible consideration as outlined in *Furnco*, 438 U.S. at 577, would permit the conclusion that age was a determining factor in Sellsted's discharge. *Chipollini*, 814 F.2d at 899. Neither we nor the trial court can make that determination without the benefit of live testimony.

Finally, Washington Mutual contends that Sellsted's allegations of age discrimination were based solely on his own unsupported speculation.[17] As we noted above, *direct*, "smoking gun" evidence is not required in discrimination cases.

> "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.' *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (CA1 1979)." *Trans World Airlines v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985).

*Chipollini*, 814 F.2d at 898. However, in this case there was also direct evidence in the form of testimony by Sellsted's successor, Neil Maris, that others in the CRE department perceived that age was a reason for Sellsted's termination and feared the same fate for themselves or others.[18]

---

later told other employees Sellsted was fired because of his lack of competence. The latter rationale is belied by Lannoye's admission that Sellsted's performance after February was satisfactory. On their face, these rationales conflict.

[17]Washington Mutual relies on *Hatfield v. Columbia Fed. Sav. Bank*, 68 Wn. App. 817, 846 P.2d 1380 (1993) to support this argument. However, *Hatfield* is clearly distinguishable. There the trial court dismissed the case after plaintiff rested because there was "no evidence . . . at all that age was determinative at all". 68 Wn. App. at 823. That simply is not the state of the evidence at this stage of this case.

[18]Washington Mutual argues that this testimony is inadmissible hearsay under ER 802. We disagree. Some portions of the testimony are not offered to

In summary, Sellsted has produced sufficient evidence to rebut Washington Mutual's performance-related reasons for his discharge. That evidence, together with the inconsistencies among the reasons, raises a material issue of fact as to whether they are either not credible, a pretext for discrimination or both. Construing this evidence and the reasonable inferences from it in the light most favorable to Sellsted, the nonmoving party, *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 351, 779 P.2d 697 (1989), a reasonable trier of fact *could* conclude that age was *a determining factor* in Washington Mutual's decision to terminate Sellsted. He thus met his burden on summary judgment, and the trial court erred in granting summary judgment in favor of Washington Mutual.[19]

Reversed and remanded.

COLEMAN and KENNEDY, JJ., concur.

Review denied at 122 Wn.2d 1018 (1993).

---

prove the truth of the matter asserted and thus are not hearsay at all. Those portions which are hearsay were admissible under the state of mind exception. ER 803(a)(3). In any event, the record does not reflect that the bank sought to have them stricken in the trial court.

[19]In view of our disposition of the primary issue, the two remaining issues — whether a motion to strike is the appropriate procedure for challenging the content of a CR 56(e) (third party) affidavit and whether a party may submit documents in support of a CR 59(a) motion for reconsideration which support testimonial facts before the court in the earlier proceeding — are moot. Sellsted will be able to offer the excluded evidence at trial. We do note, however, that nothing in CR 59 prohibits submission of new or additional material on reconsideration, and King County Local Rules 7(H)(i) and (ii) appear to contemplate such submissions. Thus, both we and the trial court could consider Sellsted's performance evaluations.