IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PAT SCHOLZ, a married man, | ) | No. 32252-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCAFCO CORPORATION, a Washington | ) | UNPUBLISHED OPINION |
| corporation, | ) | |
| | ) | |
| Respondent. | ) | |

BROWN, A.C.J. — Patrick Scholz appeals the trial court's summary judgment
dismissal of his age discrimination suit against SCAFCO Corporation.  Mr. Scholz
contends the trial court erred by (1) deciding he did not produce a prima facie case of
age discrimination and (2) not reaching or rejecting his pretext arguments.  We disagree
with Mr. Scholz' contentions and affirm.

FACTS

In November 2004, Mr. Scholz, age 50, was hired by SCAFCO's owner and
President, Larry Stone, age 58, as an at-will employee to serve as SCAFCO's financial
controller and transition to chief financial officer (CFO).  Mr. Scholz' responsibilities
included preparing SCAFCO's financial statements in a timely and accurate manner and
supervising several other departments including accounts payable, credit management,

and the custodial staff. CFO Art Mell supervised Mr. Scholz. Mr. Stone eventually realized Mr. Scholz was unsuited for the CFO position; Mr. Mell stayed on beyond his anticipated retirement, apparently while Mr. Stone sought a suitable replacement. Mr. Scholz worked under three more SCAFCO CFOs before he was terminated in January 2013 at age 58, not long before his 59th birthday.

The CFOs gave Mr. Scholz annual performance evaluations. Although Mr. Scholz characterizes his evaluations as "exemplary," they were generally "above average" or "excellent." Clerk's Papers (CP) at 152-99, 203. Jeff White, hired in 2011 at age 55, gave Mr. Scholz his final performance evaluation dated February 27, 2012. His evaluation was similar except for two categories; Mr. White noted Mr. Scholz needed to work on the accuracy and timeliness of his accounting reports.

Over time, Mr. Scholz made mistakes performing his job. For example, in 2006 or 2007, SCAFCO's outside attorney withdrew from representing SCAFCO because of Mr. Scholz; Mr. Mell interceded and relieved Mr. Scholz from his responsibility of interfacing with counsel on the matter. In early 2008, due to this incident and other perceived job performance inadequacies, Mr. Stone told Mr. Scholz he was "[n]ot a good fit as a CFO" and "not the right person for SCAFCO" as CFO. CP at 41.

In 2010, SCAFCO's credit department, which reported to Mr. Scholz, failed to follow SCAFCO's pre-lien notice procedures in what is referred to as the Kristofferson matter, resulting in a near $200,000 loss that remained in litigation until SCAFCO fired Mr. Scholz. Mr. Scholz' department ineffectively handled other pre-lien notices.

2

Despite both his belief he would be fired and knowing Mr. Stone was personally upset with him for the Kristofferson matter, Mr. Scholz failed to discuss the incident with Mr. Stone and, during the course of litigating his age discrimination claim, blamed then-CFO Dan Jondal. Partly a result of the Kristofferson matter and the other pre-lien notice issues, Mr. Scholz did not receive his customary year-end bonus in 2010. Other instances of poor performance by Mr. Scholz and his department include overstatement of SCAFCO's inventory by $1,000,000 in October 2010 and overpayment of business and occupation (B&O) tax liability by $135,000 in December 2010.

After Mr. Scholz' final evaluation by Mr. White in February 2012, two other concerning performance issues arose. First was an overstatement of SCAFCO's inventory by $800,000 in March 2012. While the overstatement did not result in loss to SCAFCO, Mr. White discussed it with Mr. Scholz and Mr. Stone; Mr. Scholz acknowledged Mr. White was "critical" of his performance in the matter. CP at 32. Second, in October 2012, two of Mr. Scholz' subordinates expressed their concerns to Mr. White about Mr. Scholz' leadership. SCAFCO did not take disciplinary action against Mr. Scholz for any of these incidents. Mr. Scholz again did not receive his 2011 or 2012 year-end bonuses.

In March 2012, SCAFCO hired Patrick Palmer, a certified public accountant (CPA) with a master's degree in business administration unlike Mr. Scholz, to be the newly created financial reporting manager. Mr. Palmer was in his mid-30s. Mr. Palmer was tasked to review and make improvements to SCAFCO's business systems. When

3

Mr. White discussed hiring Mr. Palmer with Mr. Scholz, Mr. White commented that both he and Mr. Scholz "are not getting any younger" and that "[w]e need to find some new talent out there." CP at 92. Mr. Palmer soon took over Mr. Scholz' responsibility of calculating monthly inventory evaluations. Mr. Scholz asserts Mr. Palmer attended events and meetings from which Mr. Scholz was "expressly excluded"; noted were a pizza/bunko party and a kickoff dinner for construction of a building. CP at 203.

Over time, Mr. White asserted Mr. Palmer absorbed up to 75 percent of Mr. Scholz' job responsibilities, including ensuring the accuracy of Mr. Scholz' financial statements and providing direction and guidance to those reporting to Mr. Scholz. Mr. Scholz disputes the degree of his lost job responsibilities. Mr. White stated the reason for Mr. Scholz' January 2013 termination was a personal conflict with Mr. Stone. SCAFCO's internal documents state the reason for Mr. Scholz' termination as Mr. Scholz not being a "good fit." CP at 200. SCAFCO has not yet filled Mr. Scholz' position. Mr. Scholz' remaining job duties are performed by other SCAFCO employees, mainly Mr. White, in his late 50s, and Tammy Cook, age 50, one of Mr. Scholz' former subordinates.

Mr. Scholz sued SCAFCO alleging age discrimination. After the trial court summarily dismissed Mr. Scholz' suit, he appealed.

## ANALYSIS

The issue is whether the trial court erred in granting SCAFCO's summary judgment motion and in dismissing Mr. Scholz' case. He contends the court failed to

4

recognize his prima facie case of age discrimination and argues disputed material fact issues remain for the reasons SCAFCO gave to rebut his pretext arguments.

We review summary judgments de novo and conduct the same inquiry as the trial court, "construing the facts and all reasonable inferences therefrom in the manner most favorable to the nonmoving party to ascertain whether there is a genuine issue of material fact." *Sellsted v. Wash. Mut. Sav. Bank*, 69 Wn. App. 852, 857, 851 P.2d 716 (1993), *overruled on other grounds by Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 898 P.2d 284 (1995). In cases arising under Washington's Law Against Discrimination (WLAD), granting an employer's motion for summary judgment "is seldom appropriate . . . because of the difficulty of proving a discriminatory motivation." *Scrivener v. Clark College*, 181 Wn.2d 439, 445, 334 P.3d 541 (2014).

The legislature enacted the WLAD, chapter 49.60 RCW, to prevent and eliminate workplace discrimination. *Scrivener*, 181 Wn.2d at 441. As the WLAD "embodies a public policy of 'the highest priority,'" courts must exercise careful consideration in analyzing unlawful discrimination allegations. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 179, 23 P.3d 440 (2001) (citation omitted), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006).

An employer may generally terminate at-will employees with or without cause. *Bulman v. Safeway, Inc.*, 144 Wn.2d 335, 340, 27 P.3d 1172 (2001). But under the WLAD, employers cannot discharge an employee on the basis of age. RCW 49.60.180(2). The employee must meet its initial burden by presenting a prima facie

case of age discrimination. *Becker v. Wash. State Univ.*, 165 Wn. App. 235, 252, 266 P.3d 893 (2011).

> To establish a prima facie case of age discrimination in employment, the employee must show: (1) [he] was within the statutorily protected age group of employees 40 years of age or older, (2) [he] was discharged, (3) [he] was doing satisfactory work, and (4) [he] was replaced by a significantly younger person.

*Id.* The fourth factor merely requires the employee show he was replaced by someone significantly younger; the replacement does not necessarily have to be outside of the statutorily protected class. *Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wn. App. 438, 446-47, 115 P.3d 1065 (2005).

"Once the employee establishes a prima facie case of age discrimination, the burden of production shifts to the employer, who must show a legitimate, nondiscriminatory reason for its conduct." *Becker*, 165 Wn. App. at 252. Provided the employer meets it burden, the burden again shifts to the employee to show the reason proffered by the employer was pretextual. *Id.* To satisfy this pretext prong, the employee may offer sufficient evidence to create a genuine issue of material fact showing either (1) the employer's reason is pretextual or (2) although the employer's reason is legitimate, "discrimination nevertheless was a substantial factor motivating the employer." *Scrivener*, 181 Wn.2d at 444, 447 (defining "substantial factor" to mean the protected trait was "a significant motivating factor bringing about the employer's decision"). To show pretext, the employee can establish the employer's articulated reasons "'(1) had no basis in fact, (2) were not really motivating factors for its decision,

(3) were not temporally connected to the adverse employment action, or (4) were not motivating factors in employment decisions for other employees in the same circumstances.'" *Id.* at 447 (quoting *Scrivener v. Clark College*, 176 Wn. App. 405, 412, 309 P.3d 613 (2013)).

In order to satisfy this burden, the employee "is not required to produce evidence beyond that already offered to establish a prima facie case" or "direct ('smoking gun') evidence." *Sellsted*, 69 Wn. App. at 860 (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987)); *see Rice v. Offshore Systems, Inc.*, 167 Wn. App. 77, 89, 272 P.3d 865 (2012) (Rather, "[c]ircumstantial, indirect, and inferential evidence will suffice to discharge the [employee's] burden.").

Thus, to overcome summary judgment, the employee must show "that a reasonable jury could find that the [employee's] protected trait was a substantial factor motivating the employer's adverse actions." *Scrivener*, 181 Wn.2d at 445. In order to show this, a plaintiff must set forth facts evidentiary in nature. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988); *see* CR 56(e). Ultimate facts, conclusions of facts, and conclusory statements of fact are insufficient. *Grimwood*, 110 Wn.2d at 359-60.

However, if the "record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the [employee] created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," a trial court

7

may grant summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). In deciding whether an employee's case is weak, appellate courts look at the "strength of the [employee's] prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* at 148-49; *see also Hill*, 144 Wn.2d at 190 (finding the employee's case weak where one of the people who fired employee was over 40, employer never negatively commented about age or discriminated against older workers, and employee's age was not problematic). Generally, "when [the] employee produces his . . . prima facie case plus evidence of pretext, a trier of fact must determine the true reason for the action because the record contains reasonable but competing inferences of both discrimination and nondiscrimination." *Rice*, 167 Wn. App. at 90.

The trial court correctly found Mr. Scholz did not make a prima facie case of age discrimination. Mr. Scholz, at age 58, was statutorily protected and discharged, but the trial court decided he was not performing satisfactory work and not replaced by a significantly younger person.

Mr. Scholz first argues his work performance was exemplary. He cites to his seven "exemplary" performance evaluations, lack of disciplinary action, and temporal remoteness of the events listed by SCAFCO as evidence. But the record shows "above average" or "excellent" performance reviews until his last even lower evaluation in February 2012 when Mr. White had his first opportunity to evaluate Mr. Scholz. In

8

contrast to exemplary performance, Mr. Scholz' work over the years was peppered with performance problems resulting in Mr. Stone's early belief he was not a good fit and would not become CFO as intended.

For example, the 2006/2007 incident regarding interfacing with SCAFCO's outside counsel Mr. Scholz' work was problematic. SCAFCO shows multiple other performance incidents including: (1) the Kristofferson matter in September/October 2010, a matter in continuing litigation when Mr. Scholz was fired, (2) overstatement of inventory in October 2010, (3) additional pre-lien notice issues in October/November 2010, (4) a B&O tax liability issue in December 2010, (5) overstatement of inventory in March 2012, finally causing the inventory task to be assigned to another employee, and (6) subordinates' concerns regarding Mr. Scholz' leadership. Significantly, because of these issues, Mr. Scholz did not receive an annual bonus for 2010 and after.

Mr. Scholz admits all incidents except for his subordinates' leadership concerns over which he has no personal knowledge. Even so, he minimizes their significance, shifts blame, mischaracterizes his performance as "exemplary," and, notwithstanding his failure to receive bonuses, cites lack of discipline as reasons for asserting genuine issues of material fact remain. Regarding the performance evaluations, Mr. Scholz was annually evaluated from 2005-2010, but the February 2012 low evaluation is most relevant because it is the sole evaluation received from Mr. White, who based his evaluation on his personal knowledge of Mr. Scholz' performance after he was hired as CFO in July 2011. Mr. Scholz received "satisfactory" in two categories and was

9

criticized for his inaccurate preparation of financial records. The very next month the March 2012 inventory overstatement occurred despite Mr. White's harsh evaluation.

Likewise, while Mr. Scholz correctly notes SCAFCO never took formal disciplinary action against him, he does not dispute his failure to earn bonuses and admitted he knew people were not satisfied with his work. Mr. Stone informed Mr. Scholz he would not transition to CFO. Mr. Scholz knew Mr. Stone was personally upset with him for the continuing Kristofferson matter and believed he could be fired for it. Mr. Scholz knew Mr. White was "critical" of his performance after the March 2012 inventory overstatement. Mr. White discussed other performance issues with Mr. Scholz, such as his inability to set the custodian's schedule.

As for Mr. Scholz' blame shifting, Mr. Scholz was personally responsible for accurate reporting. His job responsibilities included supervising credit management and the timely, accurate preparation of financial statements. While admitting management often gets blamed for department shortcomings, Mr. Scholz now asserts the Kristofferson matter was the fault of a departed CFO and suggests the outside accounting firm should have caught the B&O tax liability issue. "An employer may hold its management accountable for failing to keep abreast of matters it reasonably deems to be in the company's best interests." *Griffith*, 128 Wn. App. at 451.

Regarding the March 2012 inventory overstatement, Mr. Scholz incorrectly asserts genuine issues of material fact remain about his deficient performance. "Material facts" are those "upon which the outcome of the litigation depends." *Rafel Law*

10

*Group PLLC v. Defoor*, 176 Wn. App. 210, 218, 308 P.3d 767 (2013), *review denied*,

179 Wn.2d 1011, 316 P.3d 495 (2014). Given Mr. Scholz' responsibility to accurately

and timely prepare financial statements, it is immaterial who discovered the error, when

the error was discovered, or if SCAFCO suffered financial loss. Mr. Scholz failed to

present accurate and timely financial reports for SCAFCO; his contrary argumentative

assertions are deficient. *See Grimwood*, 110 Wn.2d at 360 (concluding employee's

affidavit was deficient where he merely countered employer's affidavit detailing specific

events with opinions as to the significance of the employer's facts).

Mr. Scholz next argues he was replaced by a younger man, Mr. Palmer, who was

his mid-30s. He argues Mr. Palmer took over many of his job responsibilities, began

attending events in his place, and unfairly received credit for Mr. Scholz' work.

SCAFCO points out Mr. Palmer, who was better credentialed, was hired for the newly-

created position of financial reporting manager to review SCAFCO's business systems

and make improvements. SCAFCO acknowledged Mr. Palmer took over Mr. Scholz'

monthly financial reporting duties but well before Mr. Scholz' discharge and in response

to Mr. Scholz' failure to perform those duties accurately. Mr. Scholz' former financial

controller position remains unfilled. The remaining job duties are being performed

mainly by Mr. White, age 57, and Ms. Cook, age 50, a former subordinate of Mr. Scholz,

persons not significantly younger than Mr. Scholz.

Mr. Scholz insufficiently asserts Mr. Palmer was assigned "many" of Mr. Scholz'

job duties. However, this vague statement is unsupported as Mr. Scholz does not state

11

which job duties Mr. Palmer assumed. Mr. Scholz argues Mr. White's comments about "'not getting any younger'" and needing "'to find some new talent'" demonstrate Mr. Palmer was his replacement. CP at 277. But these comments were made during a conversation Mr. White and Mr. Scholz had about creating a new position. Looking at these remarks in the light most favorable to Mr. Scholz, it is not reasonable to infer these stray remarks necessarily meant Mr. Palmer was Mr. Scholz' replacement, as businesses, especially ones with an older work force like SCAFCO, need to have a plan for succession. This statement was merely a stray remark. *See Domingo v. Boeing Emps.' Credit Union*, 124 Wn. App. 71, 89-90, 98 P.3d 1222 (2004) (finding an employer's remark that employee was "no longer a spring chicken" made three months before employee's termination "create[d] such a weak issue of fact that no rational trier of fact could conclude that [employer] fired [employee] because of her age").

Mr. Scholz makes many conclusory and vague statements about Mr. Palmer without substantiating evidence. He asserts Mr. Palmer "essentially replaced" him. CP at 69. Mr. Scholz argues he was "expressly excluded" from business meetings and functions but shows nothing more than exclusion from a pizza/bunko party and a dinner event for a community business opening. Mr. Scholz argues Mr. Palmer received credit for his work without supporting facts. Mr. Scholz suggests Mr. Palmer was hired to replace him based on his discussions with Mr. White about needing new talent, but Mr. Palmer, a CPA with a master's degree, was hired to perform newly created duties. It

12

was not until after Mr. Scholz continued producing inaccurate reports did SCAFCO transfer the reporting duties to Mr. Palmer.

In sum, looking at the evidence in the light most favorable to Mr. Scholz, we conclude Mr. Scholz fails to present facts showing he was doing satisfactory work or was replaced by a significantly younger person. Considering the burden shifting requirements, we turn to pretext.

Mr. Scholz fails to show SCAFCO's reasons for discharging him were pretextual. He asserts SCAFCO's proffered reason for discharge, deficient performance, has no basis in fact. He argues the incidents cited by SCAFCO occurred too long ago to be relevant to the decision to discharge him. SCAFCO presented evidence of several well established, even admitted, incidents of continuing poor performance over a period of time and articulated legitimate, nondiscriminatory reasons for terminating Mr. Scholz.[1] The burden then shifted to Mr. Scholz to show pretext or that age was a substantial factor in the discharge decision. But "[a]n employee cannot create a pretext issue without some evidence that the employer's reasons for termination are unworthy of belief." *Domingo*, 124 Wn. App. at 88 (citation omitted).

SCAFCO's internal documentation, discussion with Mr. Scholz, and summary judgment materials show three reasons for Mr. Scholz' discharge: (1) a personal conflict

---

[1] SCAFCO asserts the "same actor" defense, which provides "where the same actor is responsible for both the hiring and firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Hill*, 144 Wn.2d at 189 (quotation omitted). But SCAFCO improperly raised this defense for the first time in its reply materials submitted in its

with Mr. Stone, (2) Mr. Scholz "[n]ot being a good fit," and (3) performance deficiencies. CP at 200. Mr. Scholz admits he and Mr. Stone did not get along. The first two reasons are matters on which reasonable minds could not disagree. Mr. Stone told Mr. Scholz as early as 2008 that he would never be SCAFCO's CFO. And Mr. Scholz knew Mr. Stone was personally upset with him for the Kristofferson matter. As for Mr. Scholz not being a good fit, given Mr. Stone's use of that language in a previous discussion with Mr. Scholz about not being CFO material, it is not a recent fabrication. Mr. Scholz' performance deficiencies were discussed above.

Repeated discussions during employment about the issues can serve as justification for discharge. *See Griffith*, 128 Wn. App. at 450 (agreeing that while "an employer's lack of documentation for an employee's poor performance may be circumstantial evidence that the proffered discharge justifications were fabricated post hoc," repeated discussions during employment about issues later cited by the employer can justify a firing). Mr. Scholz acknowledged his supervisors discussed issues with him, and he acknowledged these incidents occurred. *See Grimwood*, 110 Wn.2d at 360 (affirming summary judgment grant partly because an employee did not dispute any incidents claimed by employer).

Mr. Scholz argues the incidents cited to by SCAFCO are too remote in time and thus must be a pretext. Most of the incidents occurred in 2010, but problems from those incidents continue today. For example, the Kristofferson matter is still in litigation. Mr.

motion for summary judgment. Thus, we do not consider that defense. *See White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 168-69, 810 P.2d 4 (1991).

Scholz felt the repercussions of the incidents until his final days of employment at SCAFCO as he did not receive an annual bonus after 2009.

Mr. Scholz admits SCAFCO employs an older working population. He admitted he never felt singled out for his age, never felt his age was problematic, never heard anyone at SCAFCO make derogatory ageist comments, and felt no sense of discrimination until Mr. Palmer was hired. *See Hill*, 144 Wn.2d at 190; *Hatfield v. Columbia Federal Sav. Bank*, 68 Wn. App. 817, 824, 846 P.2d 1380 (1993) (summary judgment proper where employee admitted he had no basis in believing supervisor treated him differently because of age, had no sense of age discrimination, and many others in management were older than employee). Mr. Scholz felt discriminated against partly because Mr. Palmer made what Mr. Scholz considered to be a lot of money for a young person, but Mr. Scholz was unaware of Mr. Palmer's superior qualifications.

## CONCLUSION

Given our analysis, we hold the trial court did not err in granting summary judgment dismissal of Mr. Scholz' age discrimination complaint. SCAFCO requests attorney fees and costs for a frivolous appeal under RAP 18.9. "'[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.'" *Granville Condo. Homeowners Ass'n v. Kuehner*, 177 Wn. App. 543, 557-58, 312 P.3d 702 (2013) (quoting *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980)). All doubts as to whether an appeal is frivolous are resolved in the appellant's favor. *Id.* at

No. 32252-1-III
*Scholz v. Scafco Corp.*

558. Even though he was unsuccessful in his appeal, Mr. Scholz cites to relevant yet distinguishable authority. Accordingly, we deny SCAFCO's RAP 18.9 request.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.