[No. 61560-8. En Banc. July 20, 1995.]

GAIL L. MACKAY, *Appellant*, v. ACORN CUSTOM CABINETRY, INC., ET AL., *Respondents*.

*Paul A. Lindenmuth*, for appellant.

*Sebris, Bustro & Marshall, P.S.*, by *Mark R. Bustro, Ellen T. Kramer* and *Jane H. Graham*, for respondents.

*Peterson, Bracelin, Young, Putra, Fletcher & Zeder*, by *Kelby D. Fletcher*, on behalf of Washington Employment Lawyers Association, amicus curiae.

*Jeffery Needle*, on behalf of Washington Employment Lawyers Association, amicus curiae.

*Davis, Wright & Tremaine*, by *Thomas A. Lemly*, on behalf of Association of Washington Business, amicus curiae.

DOLLIVER, J. — Plaintiff Gail L. Mackay challenges a trial court's jury instruction which directed the jury to find in Plaintiff's favor in a discrimination case brought pursuant to RCW 49.60.180(2), only if it concluded, *inter alia*, that gender was the "determining factor" in the decision by the Plaintiff's former employer, Defendants Acorn Custom Cabinetry, Inc. and Robert Anderson, to discharge the Plaintiff.

Plaintiff was employed as a salesperson by Defendant Acorn Custom Cabinetry, Inc., from November 1988 until January 9, 1992, at which time she was involuntarily terminated. At that time, Plaintiff was informed by Defendant Robert Anderson, President of Acorn, that she was being discharged for economic reasons. Shortly after dismissing Plaintiff, however, Anderson rehired a male salesperson who had worked for Acorn before Plaintiff.

In May 1992, Plaintiff filed an action against both Acorn and Anderson pursuant to RCW 49.60.180(2), in which she claimed, *inter alia*, that she was unlawfully discharged due to her gender. The case proceeded to a jury trial in January 1994.

At trial, Plaintiff alleged that her male counterparts at Acorn were given preferential treatment. Anderson acknowledged that Plaintiff was instructed to turn her accounts over to a male co-worker when business declined and that one of Plaintiff's male co-workers received a

company car phone while she did not. Plaintiff also alleged that Acorn is a "gender hostile work environment". Br. of Appellant, at 7. Anderson testified that photographs of partially clad women are affixed to some of the walls in Acorn's offices, that derogatory comments are occasionally made about women, and that women are sometimes referred to as "girls". Verbatim Report of Proceedings (VRP), at 39.

As further proof of discrimination, Plaintiff proffered a recommendation letter given to her by Anderson, in which he wrote: "I have never met another *female* with as much cabinet knowledge and sales ability as she has". Clerk's Papers, at 104; *see* VRP, at 69. She also proffered Anderson's admission that he would not rehire her should business improve because he did not believe that "*women* could sell higher priced cabinets". Clerk's Papers, at 104.

At trial, Anderson testified that he terminated Plaintiff not for economic reasons, as he told her in January 1992, but because he believed her attitude and job performance to be poor. Anderson claimed that Plaintiff's poor attitude was manifested by negative comments about the high cost of the company's product and by conflicts with co-workers, and that this poor attitude contributed to Plaintiff's unsatisfactory sales performance.

At the close of the presentation of evidence, Plaintiff proposed to the trial court that the jury be instructed to find in her favor if it concluded that gender was a "substantial factor" in Acorn's dismissal decision. At the same time, Acorn proposed that the jury be directed to find for Plaintiff only if it concluded that gender was a "determining factor" in the decision. After the trial judge and the attorneys for both parties engaged in an extensive debate over the applicable standard, the trial court opted to give a "determining factor" instruction. VRP, at 244. After receiving this instruction, the jury requested a clarification of the term "determining factor". Clerk's Papers, at 135. The court responded by indicating:

In determining whether plaintiff's gender was a determin-

ing factor in the decision by defendant to terminate plaintiff's employment, you need not find that her gender was the sole motivating factor. However, it is not enough for you to find that her gender entered into the defendant's decision. In order for you to find that plaintiff's gender was a determining factor, you must find that but for her gender, plaintiff would not have been discharged.

Clerk's Papers, at 135.

After deliberating, the jury returned a verdict in favor of Acorn, which it concluded had not unlawfully discharged Plaintiff. Plaintiff subsequently moved for a new trial on the ground the trial court improperly instructed the jury to apply the "determining factor" standard. The trial court denied the motion. Plaintiff then petitioned this court to review the issue.

RCW 49.60.180(2) provides:

> It is an unfair practice for any employer:
>
> . . . .
>
> (2) To discharge or bar any person from employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability or the use of a trained guide dog or service dog by a disabled person.

At issue in the present case is the meaning of the phrase "because of" as utilized in this statute. Plaintiff contends that the phrase requires the trier of fact to find for the Plaintiff if it concludes that any of the enumerated attributes was a "substantial factor" in the employer's adverse employment decision. Acorn urges that the phrase only warrants such a finding if the trier of fact concludes that one of the listed attributes was a "determining factor" in the employer's decision.

As Acorn notes, the "determining factor" standard has been employed by Washington's Court of Appeals in a number of cases. *See Lords v. Northern Automotive Corp.*, 75 Wn. App. 589, 881 P.2d 256 (1994); *Sellsted v. Washington Mut. Sav. Bank*, 69 Wn. App. 852, 851 P.2d 716, *review*

*denied*, 122 Wn.2d 1018 (1993); *Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 832 P.2d 537 (1992), *aff'd*, 123 Wn.2d 93, 864 P.2d 937 (1994); *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 810 P.2d 952, *modified*, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992); *deLisle v. FMC Corp.*, 57 Wn. App. 79, 786 P.2d 839, *review denied*, 114 Wn.2d 1026 (1990); *Stork v. International Bazaar, Inc.*, 54 Wn. App. 274, 774 P.2d 22 (1989). However, with the exception of the *Lords* court, none of these courts was presented with the question of whether the "determining factor" standard or the "substantial factor" standard is applicable in an action brought pursuant to RCW 49.60.180(2). Although the Lords court was confronted with this question, it summarily dismissed the plaintiff's contention that a "substantial factor" instruction should have been given, without offering any analysis or explanation for doing so. *Lords*, at 609.

In *Pannell*, there was controversy over the trial court's invocation of the term "determining factor". However, the plaintiff in that case did not argue that the "substantial factor" standard should have supplanted the "determining factor" standard. He conceded that the "determining factor" standard was applicable, and instead argued that the "but for" language utilized by the trial court did not reflect that standard. The appellate court disagreed, holding that both the "determining factor" and "but for" language represent the same standard. *Pannell*, at 435.

Moreover, although each of the Court of Appeals cases cited by Acorn has invoked the "determining factor" standard, none has offered any reason as to why this standard is appropriate. Therefore, these cases offer neither persuasive authority nor guidance on the question of whether the "determining factor" test or the "substantial factor" test is the appropriate standard in a case brought pursuant to RCW 49.60.180(2).

Acorn also contends that the Court of Appeals opinions in *Hatfield v. Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 790 P.2d 1258 (1990) and *Carle v. McChord Credit Union*,

65 Wn. App. 93, 827 P.2d 1070 (1992) lend support to its proposition that the "determining factor" standard is appropriate. However, in neither of these cases does the court utilize the phrase "determining factor". Rather, in *Hatfield* the court asserted:

"The ultimate issue is whether age was a factor in a decision of an employer to terminate [a] . . . claimant and whether the age of claimant *made a difference* in determining whether he was to be retained or discharged."

(Italics ours.) *Hatfield*, at 882 (quoting *Ackerman v. Diamond Shamrock Corp.* 670 F.2d 66, 70 (6th Cir. 1982)). That court also posed the question in the following terms:

Has [claimant] come forward with evidence sufficient to create an inference that [employer] was *motivated by* discriminatory intent when it terminated him? . . .

(Italics ours.) *Hatfield*, at 882. Similarly, in Carle the court stated:

"The plaintiff must prove by a preponderance of the evidence that the reason offered by the employer for plaintiff's discharge is a pretext and that a discriminatory reason more likely *motivated* the employer.". . .

(Footnote omitted. Italics ours.) *Carle*, at 107.

It is not clear whether the "made a difference" and "motivated" language employed by these two courts implicates the "determining factor" standard. Regardless, like the *Sellsted, Burnside, Pannell, deLisle,* and *Stork* courts, neither the *Hatfield* nor the *Carle* court discussed whether or not the articulated language was appropriate. Therefore, like those cases, these two cases provide no guidance on the question of whether the "determining factor" standard or the "substantial factor" standard is appropriate in a case brought pursuant to RCW 49.60.180(2).

On two previous occasions this court has had the opportunity to pass upon whether the "determining factor" or the "substantial factor" standard should be applied by a trier of fact when it considers whether or not an

employer has engaged in discrimination. *See Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991); *Allison v. Housing Auth.*, 118 Wn.2d 79, 821 P.2d 34 (1991). In both of those cases, this court held that the "substantial factor" standard is the proper one. Acorn urges that those cases are not controlling because each involved a retaliatory dismissal claim, not a discrimination claim brought under RCW 49.60.180(2). While this distinction arguably prevents those cases from controlling the present case, as Acorn suggests, it does not prevent them from providing this court with guidance as to which of the two standards should be adopted in a case involving a claim brought pursuant to RCW 49.60.180(2).

Common to both the *Wilmot* and *Allison* decisions is the conviction that if the "determining factor" standard were adopted in a retaliation case, employers would be permitted to violate the public policy of Washington with impunity. The *Wilmot* court suggested that it is the public policy of this State to protect employees who assert their statutory rights from retaliatory action by their employers. If the "determining factor" standard were adopted in a retaliation case, in order to prevail the employee would have to prove that his or her employer would not have engaged in the allegedly retaliatory action but for the employee's assertion of his or her statutory rights. Such a high burden of proof is very difficult for an employee to meet. Therefore, reasoned the court, if the "determining factor" standard were adopted an employee's protection against retaliation would be unduly circumscribed. The *Allison* court also refused to adopt the "determining factor" standard in part because it believed that the weighty burden of proof with which the employee would be saddled would severely curtail the protection against retaliation afforded to that employee by the public policy of this State.

▪▪ Underlying this State's determination to insulate an employee from retaliation is its resolve to eradicate discrimination. In *Allison*, this court articulated Washington's position on discrimination in the following manner:

> Washington's Law Against Discrimination contains a sweeping policy statement strongly condemning many forms of discrimination. RCW 49.60.010. It also requires that "this chapter shall be construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020. . . .

*Allison*, at 85-86. Washington's disdain for discrimination would be reduced to mere rhetoric if this court were to require proof that one of the attributes enumerated in RCW 49.60.180(2) was a "determining factor" in the employer's adverse employment decision. This court will not render its own words, and those of the Legislature, hollow. Accordingly, we decline to adopt the "determining factor" standard in a case involving a discrimination claim brought pursuant to RCW 49.60.180(2). Instead, we hold that in order to prevail on such a claim a plaintiff must prove that an attribute listed in RCW 49.60.180(2) was a "substantial factor" in an employer's adverse employment decision.

■ This holding is further bolstered by the reasoning of the *Allison* court. Another reason given by that court for its refusal to adopt the "determining factor" standard is that a retaliatory discharge case is a multiple causation case.

> In . . . multiple causation cases — those in which the conduct of more than one defendant or set of circumstances play a part in bringing about a plaintiff's injury — the application of the "but for" test is deemed unfair, as a matter of policy and social justice, in reaching a just result. The "substantial factor" test is generally applied in the multiple causation cases. This test states that a defendant is liable for a plaintiff's injury if the defendant's conduct was a substantial factor in bringing about the injury even though other causes may have contributed to it. . . .

*Allison*, at 93-94 (quoting Belton, *Causation in Employment Discrimination Law*, 34 Wayne L. Rev. 1235, 1248 (1988)). Like a retaliatory discharge action, a discrimination action brought pursuant to RCW 49.60.180(2) is also a multiple causation case. Therefore, it is just as unfair to

erect the high barrier to recovery implicated by the "determining factor" standard in a suit brought pursuant to RCW 49.60.180(2), as it is to do so in a retaliatory discharge suit. In fact, the *Allison* court noted:

> This reasoning for ameliorating the harshness of a "but for" standard of causation applies equally to situations involving *discriminatory* or retaliatory discharge, because both legitimate and illegitimate motives often lurk behind those decisions.

(Italics ours.) *Allison*, at 94.

■ Moreover, in *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 859 P.2d 26, *modified*, 865 P.2d 507 (1993), this court seems to have implied that the "substantial factor" standard is the proper one in a discrimination case brought under RCW 49.60.180. We noted that

> a plaintiff must provide direct evidence that the defendant acted with a discriminatory motive and that the discriminatory motivation was a "significant or substantial factor in an employment decision . . .".

*Kastanis*, at 491 (quoting *Buckley v. Hospital Corp. of Am., Inc.*, 758 F.2d 1525, 1530 (11th Cir. 1985)).

> When the record discloses *an error in an instruction* given on behalf of the party in whose favor the verdict was returned, the error is *presumed to have been prejudicial*, and to furnish ground for reversal, unless it affirmatively appears that it was harmless. . . .
>
> A harmless error is an error which is *trivial*, or *formal*, or *merely academic*, and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*

*State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977) (quoting *State v. Golladay*, 78 Wn.2d 121, 139, 470 P.2d 191 (1970)). Had the trial court in the instant case issued a "substantial factor" jury instruction rather than a "determining factor" instruction, the jury very well might have found in favor of Plaintiff. Therefore, the trial court did not make a harmless error when it instructed the jury

to find in favor of Plaintiff only if it concluded that one of the attributes enumerated in RCW 49.60.180(2) was a "determining factor" in Acorn's adverse employment decision. The error is therefore presumptively prejudicial and supplies a ground for reversal. We reverse and remand to the trial court for a new trial.

SMITH, GUY, JOHNSON, and ALEXANDER, JJ., and UTTER, J. Pro Tem., concur.

MADSEN, J. (dissenting) — Without acknowledging the fact, the majority opinion overrules *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 693 P.2d 708 (1985), this court's unanimous precedent establishing the causal standard for gender discrimination under RCW 49.60.180. Moreover, the majority's holding is unwise because the standard which it adopts allows compensatory damages to be awarded to an employee who may very well have been fired for legitimate reasons in any event. By rejecting a "determining factor" standard of causation, the majority permits a plaintiff to recover on the basis of discrimination which may not in fact result in the employment decision, and damages will be awarded where no injury in fact resulted from the employer's discriminatory motive. Finally, the majority's analysis is unsound because it is based to a large degree upon authority which is either mischaracterized or distinguishable. I therefore respectfully dissent.

In *Glasgow*, the court held that a cause of action exists under RCW 49.60 for sexual harassment. The court noted that the Legislature had declared that practices of discrimination because of sex were a matter of state concern, RCW 49.60.010, and that in furtherance of this concern, RCW 49.60.180(3) provided that "[i]t is an unfair practice for any employer . . . [t]o discriminate against any person in compensation or in other terms or conditions of employment *because of* [such person's] . . . sex. . . .". (Italics mine.) *Glasgow*, at 404 (quoting RCW

49.60.180(3)). The court further noted that under RCW 49.60.020, RCW 49.60.180(3) was to be construed liberally to achieve its purposes, and that a civil cause of action was provided by RCW 49.60.030(2) to persons injured by such violations. *Glasgow*, at 404-05. The court said that plaintiffs' claim essentially was that their employer implicitly made endurance of sexual intimidation a term or condition of their employment, and the allegations were actionable under the Law Against Discrimination, RCW 49.60. *Glasgow*, at 405.

The court specifically addressed what was required to establish that the harassment was *because of* sex:

> The question to be answered here is: would the employee have been singled out and caused to suffer the harassment if the employee had been of a different sex? This *statutory criterion* requires that *the gender* of the plaintiff-employee be *the motivating factor* for the unlawful discrimination.

(Italics mine.) *Glasgow*, at 406. See also *Coville v. Cobarc Servs., Inc.*, 73 Wn. App. 433, 438, 869 P.2d 1103 (1994) (quoting this causal requirement where sexual harassment alleged).

The same language at issue in *Glasgow* (RCW 49.60.180(3)), is at issue in this case. Under RCW 49.60.180(2), it is unlawful "[t]o discharge . . . any person from employment because of . . . sex . . .".[1] (Italics mine.) Both *Glasgow* and this case concern unlawful gender-based employment discrimination under RCW 49.60.180.

---

[1]The relevant language in the two subsections ((2) and (3)) of the statute is identical, and has not changed since *Glasgow* was decided.

RCW 49.60.180 provides in part:

It is an unfair practice for any employer:

. . . .

(2) To discharge or bar any person from employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability . . . .

(3) To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability. . . .

There is absolutely no basis to apply a different standard of causation to two subsections of the same statute where those subsections contain identical language respecting causation. *See, e.g., State v. Hutsell*, 120 Wn.2d 913, 920, 845 P.2d 1325 (1993) (same word used in different part of same statute presumed to have same meaning).

Thus, there is precedent precisely on point on the standard of causation for gender-based discrimination under RCW 49.60.180. Under *Glasgow*, discrimination is established if "the motivating factor" was gender. *Glasgow*, at 406. Although this might at first appear to be the same as "the sole" reason, *Glasgow* in fact defines what "the motivating factor" means by the question it states is the relevant inquiry, *i.e.*, "would the employee have been singled out and caused to suffer the harassment if the employee had been of a different sex?" *Glasgow*, at 406. The question plainly is whether the employee would have been subject to the same employment treatment if the impermissible discriminatory motive is taken out of the equation. In the present case, then, the question is whether Plaintiff would have been discharged in any event for legitimate reasons if discriminatory gender-based motivation is eliminated from the equation. This is another way of saying that to carry the ultimate burden of proof, the employee must establish that the determining factor in the decision to discharge was gender, or, more colloquially, that the unlawful reason "tipped the scales" in the discharge decision.

In light of *Glasgow*, the line of Court of Appeals' opinions holding that such a standard applies under RCW 49.60.180 is absolutely correct.

The majority has overlooked *Glasgow*, and sub silentio overrules it.

---

The only changes in this language from the statute as it existed when *Glasgow* was decided are: (1) The words "such person's" previously were part of both subsections and appeared immediately before the word "age"; those words were deleted in 1985. Laws of 1985, ch. 185, § 16, p. 691. (2) The word "handicap" previously appeared instead of "disability"; the substitution was made in 1993. Laws of 1993, ch. 510, § 12, p. 2339.

I do not believe that changing the standard of causation is wise, or consistent with the scheme of RCW 49.60.180. As noted in *Glasgow*, RCW 49.60.030(2) provides a cause of action for a plaintiff under the anti-discrimination laws. Available relief includes injunctive relief and actual damages, costs including reasonable attorneys fees, other appropriate remedies under RCW 49.60, plus any relief available under the United States Civil Rights Act of 1964 as amended or the Federal Fair Housing Amendments Act of 1988. RCW 49.60.030(2). Damages include damages for mental anguish and emotional distress. *Glasgow*, at 407; *Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 573 P.2d 389 (1978).

As I understand the majority opinion, this full panoply of relief is available if the plaintiff proves that a discriminatory reason was a substantial factor in the employment decision. "Substantial factor" is a standard which permits a trier of fact to find liability even if the employee would have been fired in any event for legitimate reasons.

Thus, under the majority's opinion, damages could be awarded for loss of employment even if the loss of employment would have occurred regardless of the unlawful discrimination. If the employee would have been fired in any event for legitimate reasons, where is the injury resulting from the unlawful act for which plaintiff should be compensated? Given the tort-like character of the statutory cause of action under RCW 49.60.030(2), I do not believe that the Legislature intended, in enacting RCW 49.60.030(2), that a plaintiff could recover where the employment decision is not in fact attributable to the illegal discrimination. Moreover, in my view requiring an employer to pay damages where there is no such injury is tantamount to imposing punitive damages. That result is contrary to the rule that unless expressly authorized by the Legislature, punitive damages are not allowed in this State. *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 106

Wn.2d 826, 852, 726 P.2d 8 (1986). Punitive damages under state law are not authorized under RCW 49.60.030(2).[2]

Brief reference to federal law provides a striking contrast. As of 1989, the federal circuits were "in disarray" on the causal standard for discrimination in mixed motive cases brought under Title VII for employment discrimination on the basis of gender, race, national origin, or religion. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 238 n.2, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989). The Court in *Price Waterhouse* sought to resolve the conflict. A plurality concluded that a plaintiff must establish that gender was a substantial factor in the employment decision, but that "once a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role". (Footnote omitted.) *Price Waterhouse*, at 244-45. This burden of proof on the employer to show that the same decision would have been made, as a way to avoid liability, was concurred in by Justice White, although his reasoning on the matter differs from that in the plurality.

*Price Waterhouse* was superseded by section 107 of the Civil Rights Act of 1991, which amended § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (1988) to add a new § 2000e-2(m), which provides that the employer has engaged in an unlawful employment practice when the plaintiff establishes that race, color, religion, sex, or national origin was a motivating factor "even though other factors also motivated the practice". 42 U.S.C. § 2000e-2(m) (1988 & Supp. III 1991). Once the employee establishes that a discriminatory reason was a motivating factor in the employer's decision, employer liability is established; however, new 42 U.S.C. § 2000e-5(g)(2)(B) (1988 & Supp. III 1991) limits remedies. If the employer proves

---

[2]While under limited circumstances punitive damages may be awarded under the federal civil rights act, nothing in RCW 49.60.030(2) suggests that the actual damages allowed under the statute are in the nature of punitive damages.

that it would have taken the same action even without the illegal reason, only declaratory relief, injunctive relief, and attorney fees and costs may be awarded. Damages, or ordered admission, reinstatement, hiring, promotion or payment are forbidden in such circumstances. Thus, unlike the Price Waterhouse analysis, which precluded liability if the employer proved it would have made the same decision anyway, under the 1991 act remedies are limited if the employer makes that showing, but liability is established merely upon the employee's proof that the illegal reason was a motivating factor.

Significantly, under neither the federal statute as construed in *Price Waterhouse* (a statute containing identical "because of" language to that in RCW 49.60.180), nor the 1991 amendment to the civil rights act, is a plaintiff entitled to all potentially available federal relief unless there is a failure of proof that the same decision would have been made in the absence of the illegal discriminatory reason for the employment decision.

Neither the majority's opinion nor our State statute has any similar limiting effect under the majority's "substantial factor" standard. Thus, the majority's adoption of a "substantial factor" test results in a vastly different result than such a test under federal law, and can lead to the curious result that damages may be awarded for loss of employment which would have occurred regardless of the employer's illegal discrimination.

I believe the majority opinion also contains questionable analysis. The bulk of the majority's opinion consists of an attempt to distinguish the cases upon which the employer, Acorn Custom Cabinetry, relies. Those cases decided by the Court of Appeals are, in fact, consistent with precedent, *Glasgow*.

The analysis purporting to support the majority's conclusion is quite limited, consisting primarily of reliance upon two decisions by this court involving retaliatory discharge claims. In one of those cases, *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 71, 821

P.2d 18 (1991), the court held that the "substantial factor" test of causation applied, but did so specifically "in the context of retaliation for exercise of workers' compensation rights". *Wilmot*, at 71. In reaching this conclusion, the court emphasized that the great quid pro quo of the workers' compensation act would be altered unfairly in the employer's favor if an employer could fire employees in substantial part because they sought to assert their rights under the act. *Wilmot*, at 71-72. Without question, an employer who has gained the protection of the act, and is not amenable to civil suit and related damages, cannot be permitted to make an end run on the compromise which the act represents and retaliate against workers seeking compensation under the act, thus upsetting the balance between employer and employee. *Wilmot* is clearly distinguishable from the present case.

Further, I agree with Acorn that retaliation cases may require a different showing of causation than other discrimination actions without inconsistency resulting, given that in a retaliation case the employer already knows a legal right is being (or will be) asserted, and thus is forewarned that the employer's motives for discharge are likely to be challenged. The potential for the employer considering and disguising those motives is greater in a retaliation case, thus supporting a lower burden of proof of causation in such cases.

While the other case, *Allison v. Housing Auth.*, 118 Wn.2d 79, 821 P.2d 34 (1991), does involve an allegation of conduct in violation of RCW 49.60, it, too, is a retaliatory discharge case and is distinguishable in light of policy condemning retaliation against employees who have lawfully asserted their civil rights. Besides this distinguishing fact, there is an additional reason why the majority's reliance upon *Allison* is imprudent. The majority quotes *Allison* for the proposition that in multiple causation cases "application of the 'but for' test is deemed unfair . . . . The 'substantial factor' test is generally applied in the multiple causation cases". Majority, at 310 (quoting *Allison*, at

93-94 (quoting Robert Belton, *Causation in Employment Discrimination Law*, 34 Wayne L. Rev. 1235, 1248 (1988))). The majority says it is equally unfair to use a "determining factor" standard in an action pursuant to RCW 49.60.180(2) as it is in a retaliatory discharge action. Majority, at 310-11.

Unfortunately, in quoting the law review article neither *Allison* nor the majority accurately reflects either the article or the use of a "substantial factor" standard in employment discrimination cases. Where a "substantial factor" or "motivating factor" standard of causation has been applied, it has not been applied as a single-tier inquiry, as the quoted material standing alone might suggest and as the majority here represents. Instead, where a "substantial factor" standard has been applied in employment discrimination cases, it is generally applied only as the first stage of a two-tiered analysis.

The quoted material is in the second section of the law review article, where the author overviews "Causation in Legal Theory". Belton, at 1244. The section largely deals with tort theories of causation. Belton, at 1243. As the subsequent sections make clear, in employment discrimination cases the courts combine the "substantial factor" inquiry with a second tier of analysis focusing on whether the same decision would have been made in any event. *E.g.*, Belton, at 1276-77 (discussing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)). As noted above, a "two-tier" approach involving a "substantial factor" or "motivating factor" causation standard was adopted in *Price Waterhouse*, and presently exists under the 1991 amendment to the Civil Rights Act (though in *Price Waterhouse* the second tier pertained to liability, while under the 1991 amendment the second tier pertains to remedies). Those federal circuits following a "substantial factor" test of causation prior to Price Waterhouse similarly followed a "two-tier" approach. See cases cited in *Price Waterhouse*, at 238 n.2.

The author of the article in fact did not advocate a

single-tier "substantial factor" standard at all. For a number of different scenarios (involving pretext, circumstantial and direct evidence, mixed motives, and class actions) the author never suggested that a "substantial factor" standard, without any second tier of inquiry, is the preferred standard, nor did he suggest that courts had adopted such a standard. *See* Belton, at 1283-93.

The majority cites *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 491, 859 P.2d 26, *modified*, 865 P.2d 507 (1993) as implying that a "substantial factor" test is proper under RCW 49.60.180. Majority, at 310-11. At the cited page, the court was discussing the standards under federal cases for establishing a prima facie case of discrimination by direct evidence. Ignored by the majority is the next sentence which says that once the employee provided direct evidence that a discriminatory motive was a significant or substantial factor in the employment decision, the employer had the burden of showing that the same decision would have been reached absent the illegal reason. *Kastanis*, at 491. Moreover, the majority has failed to consider the next page of the opinion, where the court said that once the prima facie case is established, the shifting burdens described earlier in the opinion drop from the case and the plaintiff bears the burden of proving discrimination to the jury. *Kastanis*, at 492. The standard of causation was not identified. Thus, while *Kastanis* mentions a "substantial factor" inquiry, it is a two-tiered inquiry, and, moreover, the context in which it is discussed is the prima facie case. *Kastanis* does not support the majority opinion.

The majority has not cited a single case other than *Allison* where a "substantial factor" standard was used in a civil rights discrimination action in the absence of a two-tier analysis. My review of the law in this area suggests that the reason for the absence of cited authority is because there is a dearth of authority in support of the standard of causation which the majority adopts.

In my view, this court should adhere to the standard of

causation it established in *Glasgow,* a standard followed consistently by the Court of Appeals. *See Stork v. International Bazaar, Inc.,* 54 Wn. App. 274, 285, 774 P.2d 22 (1989) (whether age was determining factor in decision to discharge or whether employee would not have been fired but for age); *deLisle v. FMC Corp.,* 57 Wn. App. 79, 82, 786 P.2d 839 (ultimate issue whether but for age employee would have been discharged), *review denied,* 114 Wn.2d 1026 (1990); *Hatfield v. Columbia Fed. Sav. Bank,* 57 Wn. App. 876, 882, 790 P.2d 1258 (1990) (whether age made a difference in determining whether employee retained or discharged), *disapproved on other grounds in Burnside v. Simpson Paper Co.,* 123 Wn.2d 93, 864 P.2d 937 (1994); *Pannell v. Food Servs. of Am.,* 61 Wn. App. 418, 431-32, 435, 810 P.2d 952, 815 P.2d 812 (1991) (approving jury instruction that plaintiff must prove age was a determining factor in his termination), *review denied,* 118 Wn.2d 1008 (1992); *Burnside v. Simpson Paper Co.,* 66 Wn. App. 510, 524-26, 832 P.2d 537 (1992) (approving jury instruction that age had to be determining factor in discharge and but for age employee would not have been discharged), *aff'd on other grounds,* 123 Wn.2d 93 (1994); *Sellsted v. Washington Mut. Sav. Bank,* 69 Wn. App. 852, 860, 851 P.2d 716 (ultimate issue in age discrimination case is whether age was determining factor in employer's decision), *review denied,* 122 Wn.2d 1018 (1993); *Lords v. Northern Automotive Corp.,* 75 Wn. App. 589, 609-10, 881 P.2d 256 (1994) (determining factor standard).

Finally, I recognize that RCW 49.60 has a dual purpose. The laws against discrimination serve not only to provide a cause of action for the people of this state, but also to deter unlawful discrimination on the part of employers. Of course, providing a civil cause of action for those discriminated against serves both purposes. I believe a greater deterrent effect could be achieved under a statutory scheme such as is now in place under federal law in mixed motive cases. Under that scheme, declaratory relief, injunctive relief, and costs and attorney fees are awardable in those employment situations where discrimination

is a substantial factor but does not constitute the determining consideration. However, that is not the way state law is presently written, and I do not believe it appropriate for this court to rewrite RCW 49.60.

I would follow the holding in *Glasgow* that a "determining factor" standard of causation is the correct standard for causation under RCW 49.60.180. The majority's adoption of a single-tier "substantial factor" standard will result in a full panoply of damages and other relief from employers whose discriminatory motive was not outcome determinative in a challenged employment decision. I do not believe that the Legislature ever intended such a result. I would affirm.

Reconsideration denied September 7, 1995.