116 F.3d 485
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David RAGLIN, Plaintiff,
and
Kenneth STANBACK; Shirley Stanback, Plaintiff-Appellants,
v.
UNITED PARCEL SERVICE; Doug Lilley; Jane Doe Lilley,
Defendant-Appellees.
David McELROY; David Raglin; Mary McElroy; Plaintiffs-Appellants,
v.
UNITED PARCEL SERVICE, Defendant-Appellee,
and
Doug LILLEY, Counter-Claimant-Appellee.
 Nos. 95-36034, 95-36035, 95-36083.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted November 7, 1996.
Decided June 9, 1997.
 
 1
 Appeal from the United States District Court for the Western District of Washington, No. CV-94-5353-RJB; Robert J. Bryan, Presiding.
 
 
 2
 Before: BRUNETTI and O'SCANNLAIN, Circuit Judges; WILLIAMS,[2] District Judge.
 
 MEMORANDUM[1]
 
 3
 Plaintiffs-appellants Kenneth Stanback ("Stanback"), David McElroy ("McElroy"), and David Raglin ("Raglin") appeal the district court's order severing Stanback's complaint from that of McElroy and Raglin and the court's various orders granting summary judgment in favor of defendant-appellee United Parcel Service ("UPS"). UPS cross-appeals the district court's denial of its motion seeking to limit Stanback's potential recovery. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.
 
 
 4
 This appeal requires us to examine the following issues:
 
 
 5
 1.) Did the district court err in granting UPS's motion for summary judgment against Stanback on his state-law claim for disparate treatment based on race?
 
 
 6
 2.) Did the district court err in granting UPS's motion for summary judgment against Stanback on his state-law disability discrimination claim?
 
 
 7
 3.) Did the district court err in granting UPS's motion for summary judgment against McElroy on his federal and state-law claims for discriminatory discharge and disparate treatment based, on race?
 
 
 8
 4.) Did the district court err in granting UPS's motion for summary judgment against Raglin on his state-law retaliation/retaliatory discharge claim?
 
 
 9
 Because we affirm the court's grant of summary judgment for UPS as to all plaintiffs' discrimination claims, it is unnecessary to examine whether the district court erred in severing Stanback's complaint from those of McElroy and Raglin. In addition, it is unnecessary to pass on UPS's cross-appeal that the district court erred in denying UPS's motion for partial summary judgment seeking to limit Stanback's potential damages.
 
 FACTS AND PROCEEDINGS BELOW
 Kenneth Stanback
 
 10
 Plaintiff Kenneth Stanback is an African-American who was actively employed by UPS as a package delivery driver out of its Kent Center in Tukwila, Washington from April 1984 to August 1992. Since August 1992, Stanback has remained on medical leave of absence from active employment.
 
 
 11
 Plaintiff asserts that under supervisors Jay Olsen and David Sheridan, both assigned to the Kent Center in early 1991, he encountered a continuing pattern of racial and disability discrimination until he was placed on medical leave. On June 13, 1994, Stanback and his wife (along with McElroy and Raglin) filed a lawsuit against UPS in state court alleging discriminatory employment practices based on race in violation of the Civil Rights Act and Washington state law. Upon UPS's motion, the case was removed to district court on July 5, 1994. On September 13, 1994, the Stanbacks' claims were severed from those of Raglin and the McElroys.
 
 
 12
 On June 6, 1995, the district court granted UPS's unopposed motion for summary judgment dismissing Stanback's federal discrimination claims. UPS filed a subsequent motion for partial summary judgment and for a stay which was denied on September 5, 1995.[3] On September 20, 1995, the district court granted UPS's final motions for summary judgment on Stanback's remaining state-law racial and disability discrimination claims. The district court had held that the applicable statute of limitations precluded Stanback from asserting any state-law discrimination claims based on events before June 13, 1991. On the post-June 13, 1991 racial discrimination claims, Judge Bryan concluded:
 
 
 13
 [Stanback] has not presented any specific, probative evidence that he was discriminated against.... [Stanback] clearly ... did not like the way that [his supervisors] treated him. But unless he can show a racial nexus, that treatment does not give rise to a cause of action for discrimination. He offers no evidence that his treatment was based on racial animus or was a pretext for racial discrimination.
 
 
 14
 Appellant's Excerpts of Record (Stanback) 162. The court also granted summary judgment as to Stanback's disability discrimination claim on the ground that Stanback failed to show that he sought accommodations from UPS or that UPS was even aware of the need for accommodation.
 
 David McElroy
 
 15
 Plaintiff David McElroy, an African-American, was employed as a parcel delivery driver at the UPS Fife distribution center in Tacoma, Washington from April 1985 until his termination in December 1992. McElroy maintains that UPS supervisors perpetrated a pattern of race-based harassment during this period by imposing a difficult delivery route and a high number of supervisory ride-alongs, and by unfairly administering discipline upon him. UPS suspended McElroy after accusing him of hitting his supervisor, Leroy Freeman, who is also African-American. UPS fired McElroy following an incident in which McElroy intervened in an altercation between Raglin and supervisor Doug Lilley and proceeded to shout a highly inflammatory obscenity at Lilley. A joint labor-management arbitral panel upheld the termination based on the existence of just cause and McElroy's history of misconduct.
 
 
 16
 McElroy and his co-plaintiffs filed suit in state court. After the suit was removed to federal court, the court severed Stanback's claims from those of Raglin and McElroy. (Stanback worked in a geographically separate UPS distribution center.) McElroy also filed a complaint against UPS in federal district court in October 1993, alleging discriminatory employment practices based on race in violation of Title VII, 42 U.S.C. § 2000e. On September 20, 1995, the district court granted UPS's motion for summary judgment against McElroy, stating that McElroy failed to produce any evidence to show that UPS's reasons for his discharge were pretextual and that he failed to sustain his burden with specific probative evidence of disparate treatment motivated by a discriminatory purpose.
 
 David Raglin
 
 17
 Plaintiff David Raglin, who is white, was also employed as a delivery driver for UPS at the Fife Center in Tacoma, Washington for two periods of time, from November 1986 until his resignation in August 1987, and from August 1988 until his resignation in April 1995. Raglin alleges that in 1991 and 1992 he had complained to UPS managers that McElroy had a more difficult route than other delivery drivers. At that time, he did not specifically complain that UPS had discriminated against McElroy based on his race. Raglin contends that after he pointed out McElroy's disparate workload, UPS subjected him to harassment and various retaliatory acts, such as unfair adjustments to delivery routes, unfair discipline, warning letters for avoidable accidents, and refused requests for pick-up assistance. In June 1993, Raglin lodged his first complaint regarding unfair treatment of black drivers.
 
 
 18
 On December 11, 1992, Raglin became involved in a verbal altercation with supervisor Lilley following his refusal to answer Lilley's questions and clean up tobacco juice which Raglin had spit on the center floor. Lilley suspended Raglin, and following an investigation by various UPS supervisors and labor relations personnel, Raglin was charged with gross insubordination and terminated. After Raglin filed a grievance with his union representative, a hearing was held and Raglin was reinstated. The panel found that Raglin's conduct amounted to misconduct warranting discipline but did not rise to the level of gross insubordination. The panel also found that Raglin had not been previously warned about insubordination.
 
 
 19
 In the district court proceedings, Raglin presented a claim for retaliation based on state law, as his federal discrimination claims were dismissed for failure to exhaust administrative remedies. The district court granted UPS's motion for summary judgment on the ground that Raglin's protected activity, if any, occurred long after his termination. In addition, the court held that Raglin failed to demonstrate a causal link between the perceived retaliatory actions by UPS and his complaints of racial discrimination.
 
 DISCUSSION
 
 20
 We review de novo a district court's grant of summary judgment. Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994). Summary judgment should be granted only if no genuine issue of material fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996).
 
 
 21
 To survive summary judgment, the nonmoving party must produce evidence of sufficient caliber or quantity to allow a rational trier of fact to produce a verdict in its favor. Anderson v. Liberty Lobby, 477 U.S. 242, 254 (1986). No genuine factual issue exists for trial where a nonmoving party rests on mere allegations or denials, or shows "some metaphysical doubt." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Conclusory, non specific statements in affidavits are generally not sufficient, and a court will not presume missing facts. Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990). The facts relied on must be admissible under rules governing admission of evidence generally. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 (9th Cir.1990). For example, inadmissible hearsay will not be considered a "fact" for the purposes of summary judgment. Courtney v. Canyon Television & Appliance Rental. Inc., 899 F.2d 845, 851 (9th Cir.1990). Federal Rule of Civil Procedure 56(e) explicitly requires that affidavits submitted in opposition to a motion for summary judgment be based on personal knowledge.
 
 
 22
 Thus, the present appeal stands or falls on the issue of whether the nonmoving parties, Stanback, McElroy, and Raglin, have produced enough admissible evidence of discriminatory intent, under the evidentiary standards of the applicable antidiscrimination laws, to warrant moving forward with a jury trial. See Anderson, 477 U.S. at 255.
 
 
 23
 We view the facts in the light most favorable to the nonmoving party. Salmeron v. United States, 724 F.2d 1357, 1359 (9th Cir.1983). We may affirm on any ground supported by the record. Id. at 1364.
 
 I.
 
 24
 The District Court Properly Granted UPS's Motion for Summary
 
 Judgment Against Stanback on His Racial
 Discrimination Claims
 
 25
 In the district court proceedings, Stanback's claims for discrimination were based on Washington state law, Wash. Rev.Code § 49.60 et seq. Because of the close similarity between Title VII, 42 U.S.C. § 2000e and Washington antidiscrimination law, the Washington courts have adopted federal case law interpreting and applying state discrimination law. Xieng v. Peoples Nat. Bank of Washington, 120 Wash.2d 512, 518, 844 P.2d 389 (1993).
 
 
 26
 Stanback's claim focuses on disparate treatment, that he was treated less favorably because of his race than other employees. We examine a disparate treatment claim using Title VII's three-step McDonnell Douglas test. The plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) plaintiff belongs to a protected class; (2) he was performing his job satisfactorily; and (3) he suffered an adverse employment action or was treated less favorably than others. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). At the district court, the parties agreed that a fourth element typically applied in discriminatory discharge cases, replacement by a person outside of plaintiff's protected class, is not applicable here because plaintiff has remained on medical leave and had not been replaced by a person outside of his protected class. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decisions. Id. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive. Id. at 804. To preclude summary judgment, the employee, even if he establishes a prima facie case, must come forward with specific, substantial evidence of pretext. Wallis, 26 F.3d at 890. "In other words, the plaintiff must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." Id. (internal quotations and citation omitted).
 
 
 27
 A claim of disparate treatment typically requires that the plaintiff present direct or circumstantial proof of a discriminatory motive. Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir.1988). Evidence that a plaintiff was treated differently than others outside of his class is circumstantial proof of discriminatory motive. Id. For example, the plaintiff may show that similarly situated employees outside of his or her protected group did not receive the same adverse treatment the employer allegedly imposed on the plaintiff.
 
 
 28
 Under Washington law, a plaintiff must show that discriminatory intent was a "substantial factor" leading to the employer's adverse employment action, rather than show it was a "determining factor," the somewhat narrower standard under federal law. Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 310, 898 P.2d 284 (1995). If, based on all the evidence, a rational trier of fact could not find that an employer's action was taken for impermissibly discriminatory reasons, summary judgment is appropriate. Wallis, 26 F.3d at 889.
 
 
 29
 We assume for the purposes of this appeal that Stanback has adequately set out a prima facie case as to each allegation of disparate treatment. Next, we consider whether UPS presented evidence of legitimate, nondiscriminatory reasons for its actions and whether Stanback countered with evidence that UPS's stated reasons veil discriminatory motives. As Stanback introduced no direct evidence of discriminatory intent, he has the burden of introducing specific, probative evidence that UPS treated him worse than employees outside his racial group. See McDonnell Douglas, 411 U.S. at 804 (comparative evidence is especially relevant to the issue of pretext). We discuss Stanback's allegations seriatim, and note that Stanback relied solely on his own declaration, and no other evidence, in his attempt to defeat UPS's motion for summary judgment.
 
 
 30
 (1) Stanback alleges that his assigned route was more difficult than others' routes, as his involved heavy traffic and packages requiring time-consuming cash-on-delivery procedures. UPS introduced company statistics showing his route to be of comparable difficulty to other drivers' routes. Aside from his own declaration, Stanback introduced no evidence showing his workload was heavier than that of other Kent Center drivers. Stanback's conclusory declaration does not amount to "specific, substantial" evidence required to defeat a motion for summary judgment. Conspicuously missing from the record is any testimony from other similarly situated drivers, who presumably have personal knowledge of the idiosyncrasies of their routes, demonstrating that their routes are somehow less burdensome.
 
 
 31
 (2) Stanback alleges that UPS increased his "stops per on-road hour" (or "SPORH") requirements without considering the factors that slowed his performance. UPS introduced evidence that the increased SPORH benchmarks took into account the particulars of his route, as they were derived from his supervised performance while working that route. Stanback presents no specific evidence indicating that UPS handled other employees' SPORH requirements in a different manner.
 
 
 32
 (3) Stanback alleges that UPS denied him assistance when requested and that his resulting inability to maintain his workload led to undeserved reprimands. UPS produced evidence that Stanback requested more assistance than any other driver and that in any event, the refusals resulted from lack of available help. Stanback alleges that white employees were not reprimanded for their inability to keep up their workloads, but provides only his own declaration to support this. The general statement that white employees did not receive reprimands fails to amount to admissible, specific, and probative evidence for two reasons. First, Stanback provides nothing to indicate that he was in a position to have personal knowledge of the reprimands given to the other drivers in the Center, and second, the broad, allegation concerning treatment of white employees fails to amount to specific evidence of disparate treatment, warranting a jury trial. Again, conspicuously absent from the record is any testimony from a white driver, or another person with personal knowledge, that a particular white driver did not receive reprimands under similar circumstances.
 
 
 33
 (4) Stanback alleges that UPS documented a reprimand for a missed package pick-up when three of his white co-workers who missed pick-ups did not receive similar reprimands. UPS introduced evidence that it disciplined Stanback for missing pick-ups in order to protect its business interests. Stanback bases his allegation of disparate treatment solely on the basis of his own declaration, and fails to establish that he had any personal knowledge that his three co-workers were not disciplined. Stanback did not introduce any testimony from the three workers, nor any UPS records relating to the absence of punishment.
 
 
 34
 (5) Stanback alleges that UPS imposed on him a disproportionately high number of supervised training rides. UPS produced evidence that it focuses supervisory attention on low-performing drivers in order to raise the general level of productivity. Stanback failed to introduce any specific evidence that he was treated differently than other low-performing drivers.
 
 
 35
 (6) Stanback alleges that his supervisors often called him into the office for reprimands, while other co-workers tended to receive more casual warnings on the shop floor. UPS produced evidence that supervisors Olsen and Sheridan frequently called Stanback into the office in response to various and repeated performance problems. Olsen testified that his practice was to give oral warnings on the shop floor for nonrecurring, minor infractions. Stanback provided no specific evidence suggesting that the gravity of his violations mirrored those of co-workers receiving shop-floor warnings, or that UPS management deviated from its normal policies and practices in disciplining him.
 
 
 36
 (7) Stanback states that he was unfairly reprimanded for taking a vacation day he alleges was preapproved by Sheridan. UPS introduced evidence that Sheridan never authorized Stanback to take the day off, and that Sheridan instructed Stanback to return to work immediately. Stanback refused, resulting in a two-day suspension for insubordination. Stanback produced no specific evidence of disparate treatment, only his vague declaration that he had never seen other employees reprimanded for similar activity.
 
 
 37
 In their attempts to raise a genuine issue of material fact as to pretext, the plaintiffs in this case repeatedly rely on their own testimony that they "had never seen" similar treatment of other employees. This compels us to take a short detour to discuss the evidentiary value, or lack thereof, of a discrimination plaintiff's declaration that he has never seen (or heard) of employees outside the plaintiff's class handed similar adverse treatment by an employer. An employee has the burden of producing specific, substantial evidence of disparate treatment, such that a reasonable jury relying on that evidence could find in favor of the employee. Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983). "Negative" evidence such as Stanback's declaration is a conclusory allegation disguised as specific evidence. It fails to raise a substantial factual issue, for without evidence that declarant was in a singular position to have significant personal, non-hearsay, knowledge of others' treatment, the testimony provides no credible and specific evidence of disparate treatment. Just because Stanback (who, according to his own testimony, largely spent his workdays on the road) never witnessed other similarly situated employees receiving reprimands hardly merits an inference that UPS did not in fact mete out such reprimands. Because this "negative" evidence will rarely be probative, specific evidence of disparate treatment will typically require affirmative evidence involving particular treatment of particular people. For example, Stanback could have supported his allegation with deposition testimony of a white employee showing that he did not receive a reprimand following an unscheduled day off. This Stanback failed to do. Stanback therefore failed to raise a genuine issue of fact of pretext.
 
 
 38
 (8) Stanback alleges that Olsen touched his arm in such a manner that caused him extreme pain and aggravation of a previous injury. Olsen provided testimony that he tapped plaintiff on the arm seeking only to get plaintiff's attention. Even if the evidence did support Stanback's version of the facts, Stanback failed to produce any circumstantial evidence of racial motivation.
 
 
 39
 (9) Stanback also complains that he was forced to overload a handtruck, and that he never saw white employees treated similarly. His declaration fails to provide specific, probative evidence of disparate treatment necessary to survive summary judgment.
 
 
 40
 (10) Stanback complains that UPS at various times delayed delivery of his paycheck. UPS provided evidence that the paychecks were delayed due to actions in the accounting department or other places outside the Kent Center. Stanback provided no admissible evidence of disparate treatment as to this minor complaint.
 
 
 41
 (11) Stanback alleges that someone had tampered with the steering mechanism in his truck "as part of an ongoing pattern of discrimination against me because of my race." UPS provided evidence that it addressed Stanback's complaints about his truck in the same manner as similar concerns from other drivers, and that a mechanic certified that Stanback's truck was safe. Stanback provided no evidence whatsoever to support his claim of a racially motivated tampering.
 
 
 42
 (12) Stanback alleges that his supervisors verbally insulted him, asked him why he worked for UPS, and told him he was stupid and worthless. UPS supervisor Olsen stated that he repeatedly explained to Stanback that he was one of the lowest performing drivers in the Kent Center and that the supervised training rides were intended to assist him in developing the delivery skills and methods necessary to bring his performance to acceptable levels. Olsen says that he told Stanback that he needed to "work smarter." In support of his disparate treatment theory, Stanback states that he never observed or heard a UPS manager treat white employees in the same fashion. Again, this general, conclusory statement fails to rise to the level of specific, probative evidence of racial motivation.
 
 
 43
 In sum, we agree with the district court that although Stanback offers ample evidence that he felt victimized by his working conditions, he offers no specific, probative evidence that his treatment was based on racial animus. Stanback goes on to argue that regardless of the nonexistence of evidence of pretext, racial discrimination cases such as his should be submitted to the finder of fact to determine whether pretext exists based on the objectivity, sincerity, and honesty of the witnesses.[4] In other words, he ask us to reconsider the rule in Wallis, where we held that a discrimination plaintiff must produce evidence of pretext, in addition to establishing the elements of the prima facie case, to survive summary judgment. This we refuse to do. Stanback's position "would require a trial in every discrimination case, even where no genuine issue of material fact exists concerning the legitimacy of the employer's nondiscriminatory reasons." Wallis, 26 F.3d at 890. Where a plaintiff must produce specific, substantial evidence of pretext to preclude summary judgment, mere assertions of discriminatory motive are insufficient. Id.
 
 
 44
 Because Stanback failed to raise a genuine issue of material fact as to the essential element of his claim that race was a "substantial factor" leading to the litany of adverse employment actions alleged, the district court properly granted summary judgment.
 
 II.
 
 45
 The District Court Properly Granted UPS's Motion for Summary
 
 Judgment Against Stanback on His State Law
 Disability Discrimination Claim
 
 46
 To establish a prima facie case of disability discrimination under Washington law, the plaintiff must produce evidence that: (1) he is disabled; (2) that he is qualified for his job; and (3) that the defendant employer failed to reasonably accommodate his disability or discriminated against him because of that disability. Reese v. Sears Roebuck & Co., 107 Wash.2d 563, 579, 731 P.2d 497 (1987), overruled on other grounds by Phillips v. City of Seattle, 111 Wash.2d 903, 766 P.2d 1099 (1989). Once that prima facie case is established, the burden shifts to the employer who must demonstrate that the refusal to accommodate is based on a nondiscriminatory reason. Id. at 579.
 
 
 47
 Here, Stanback suffered from a shoulder injury, a condition UPS does not dispute. However, the evidence shows that UPS placed Stanback on medical leave upon his request and only returned him to his delivery route after his doctor had cleared him to work without restriction. Granting of medical leaves of absence amounts to "reasonable accommodation" in this circumstance. See Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 878-79 (9th Cir.1989), cert. denied, 498 U.S. 814 (1990) (holding that an employer provided employee reasonable accommodation by granting a medical leave of absence during employee's episodes of migraine headaches). Accordingly, because Stanback presented no evidence showing UPS denied him a reasonable accommodation of a disability, the district court properly granted summary judgment as to this claim.
 
 III.
 
 48
 The District Court Properly Granted UPS's Motion for Summary
 
 Judgment Against McElroy on His Racial
 Discrimination Claims
 
 49
 a. McElroy's Discriminatory Discharge Claim
 
 
 50
 After McElroy shouted at his supervisor an inflammatory obscenity, UPS terminated McElroy's employment on the ground of gross insubordination. McElroy's claim for race-based discriminatory discharge is based on Title VII, 42 U.S.C. § 2000e, and Wash. Rev.Code § 49.60 et. seq. Under both authorities, McElroy must prove a prima facie case by showing: (1) he belongs to a racial minority; (2) he was performing his job satisfactorily; (3) he was discharged; and (4) he was replaced by a person with equal or inferior qualification, not within the same protected class. McDonnell Douglas, 411 U.S. at 802. McElroy has failed to present any evidence establishing the fourth element of this test, a failure that precludes him from making a prima facie case of discriminatory discharge. Summary judgment was therefore proper as to this claim.
 
 
 51
 b. McElroy's Disparate Treatment Claim
 
 
 52
 McElroy's claim for race-based disparate treatment is based on Title VII, 42 U.S.C. § 2000e, and Wash. Rev.Code § 49.60 et seq. The applicable law is discussed at section I, supra. We assume for the purposes of this appeal that McElroy established a prima facie case of disparate treatment as to each of his allegations. Next we consider whether UPS presented legitimate reasons for each alleged adverse employment action and whether McElroy raised genuine factual issues as to whether UPS's stated reasons are pretextual.
 
 
 53
 (1) McElroy alleges that his route was more difficult than other drivers' routes because it entailed more stops, heavier packages, and many packages requiring cash on delivery. He alleges that the company's method of analyzing route productivity does not account for the above-stated factors. While Raglin provided a declaration that "I frequently challenged UPS managers to explain why the route assigned to David McElroy, the Fife Center's only black driver, was consistently more difficult than the routes assigned to non-black drivers," this evidence is not specific enough to survive the motion for summary judgment. Raglin's testimony concerns his communication of a complaint to his supervisors, it does not provide any specific factual basis on which a reasonable jury could find that UPS did indeed assign McElroy a heavier workload.
 
 
 54
 (2) McElroy complains that UPS harassed him by imposing a high number of supervisory ride-alongs. UPS provided evidence that McElroy was among the lowest performing drivers at his center, and UPS focused a disproportionate amount of supervisory time on him and other low performers. Further, UPS provided evidence that McElroy received a comparable number of ride-alongs as the other low-performing employees. To support his claim of pretext, McElroy points to a single page of statistics from a single week as evidence that his productivity met or exceeded that of his coworkers. Evidence that McElroy on one occasion performed up to par does not subvert the credibility of UPS's stated reasons.
 
 
 55
 (3) McElroy claims that his supervisor, Leroy Freeman, who is black, refused to show him his employment file. Fellow driver Mark Newton also declared that he witnessed Freeman prevent McElroy from gaining access to his file. Freeman testified that he had received information that McElroy had been found in the Center office going through files alone, and that as a consequence of the fear McElroy would simply take his file, UPS moved McElroy's file to a private locked office. McElroy provided some evidence to refute this legitimate business reason for the adverse employment action. David Raglin stated in his declaration that when he had sought access to his personnel file, UPS raised no objection to his inspection of the records. Newton, who is white, also declared that when he had asked to see his personnel file, UPS did not object to his request. The comparisons are not apt in light of the circumstances leading to UPS's limiting McElroy's access to his file. Without evidence that the other two employees were similarly situated, or evidence that UPS failed to follow its own policies and procedures as to granting access to personnel files, McElroy fails to sustain his burden of showing pretext.
 
 
 56
 (4) McElroy complains that UPS reprimanded him for missing a pick-up for which he was not scheduled, and that UPS never admonished Newton, who was responsible for the pick up. UPS explained that McElroy was admonished because he had failed to follow the proper procedures. McElroy offers the declaration of Newton, who states, "I later became aware that David McElroy was disciplined for failure to make the pickup, even though that responsibility was assigned to me." Newton's declaration does not indicate that he himself was not reprimanded. Thus, McElroy provided no evidence of disparate treatment.
 
 
 57
 (5) McElroy alleges that his supervisor failed to allow the shop steward to listen to a dispute with Freeman. McElroy supports his allegation of disparate treatment by stating, "I have never observed a white employee denied access to representation in the same fashion." As discussed above, this is not specific, probative evidence sufficient to overcome a motion for summary judgment.
 
 
 58
 Of the haystack of minor complaints asserted by McElroy, we can find no specific, substantial evidence that racial motivations lurked beneath UPS's stated reasons for its various employment actions. Accordingly, McElroy failed to raise an issue of material fact as to pretext, and summary judgment against him was proper.
 
 IV.
 
 59
 The District Court Properly Granted UPS's Motion for Summary
 
 Judgment Against Raglin on His
 Retaliation/Retaliatory Discharge Claim
 
 60
 Raglin claims he was fired in retaliation for exercising his right to complain to management about the alleged racially biased treatment of McElroy. His claim is based on state law, Wash. Rev.Code § 49.60.210. Raglin must establish a prima facie case of retaliation by showing that (1) he engaged in protected activity; (2) he thereafter suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 68, 821 P.2d 18 (1991). A causal link can be demonstrated through direct or circumstantial evidence. Id. at 69. The McDonnell Douglas burden-shifting analysis then applies.
 
 
 61
 Because Raglin does not provide proof of a causal connection, he fails to set out a prima facie case as to any adverse employment action undertaken before June 1993, in particular, his December 1992 discipline. According to Raglin's own admission, he first accused UPS management of treating black employees unfairly in June 1993. Even if Raglin's pre-1993 statements as to the relative difficulty of McElroy's route could be construed as accusations of racial discrimination, the managers responsible for subsequent employment actions were unaware of Raglin's complaints.
 
 
 62
 Raglin alleges that after June 1993 UPS retaliated against him by inflicting upon him more than two dozen instances of adverse treatment. These actions include an instruction to wear a seat belt, a clearly false allegation that UPS released his medical records to another employee, a written warning concerning a minor accident, and reprimands for dress code violations. A careful review of the record shows that UPS provided a legitimate business rationale for all of the actions alleged (where there is evidence the actions actually occurred), and that Raglin provided not one scintilla of evidence of disparate treatment. Mr. Raglin's brief to this court allots only one page to an analysis of Raglin's claims, and this analysis points to no specific evidence that undermines credibility of UPS's proffered reasons. Raglin merely asserts that "[t]he jury should decide ... the motivation behind UPS's actions." As discussed above, Wallis mandates that Raglin must produce a genuine issue of material fact as to pretext to avoid summary judgment. The district court properly granted summary judgment in favor of UPS.
 
 V.
 Other Contentions
 
 63
 Because we affirm the district court's summary judgment as to all plaintiffs, we need not reach the merits of plaintiffs' contention that the district court erred in severing Stanback's claims from the McElroy-Raglin claims. This issue was relevant only to the amount of damages available to the plaintiffs. Since plaintiffs are entitled to no damages, this issue is moot.
 
 
 64
 In addition, because we affirm the grant of summary judgment as to plaintiff Stanback, we need not reach the merits of UPS's cross-appeal concerning whether Stanback is judicially estopped from recovering more than the amount listed in his bankruptcy petition.
 
 CONCLUSION
 
 65
 Federal and state antidiscrimination laws do not entitle a plaintiff to relief for having a mean boss, a tiring work load, or generally unpleasant work conditions. As we remarked in another context, these laws are not intended as a vehicle for general judicial review of business decisions. Douglas v. Anderson, 656 F.2d 528, 535 (9th Cir.1981) (discussing the Age Discrimination in Employment Act). The fact that two of the plaintiffs are racial minorities and that one had allegedly complained of unfair treatment of a black co-worker does not magically transform plaintiffs' complaints into actionable discrimination claims. Owing to the lack of any specific, probative evidence of disparate treatment, summary judgment was proper as to all the plaintiffs' claims.
 
 
 66
 AFFIRMED.
 
 
 
 [2]
 The Honorable Spencer M. Williams, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [3]
 In this motion UPS contended that the Stanbacks' claim for damages should be limited to $14,820 under the doctrine of judicial estoppel. UPS argued that the Stanbacks, in their concurrent bankruptcy proceeding, had assigned the present action a value of $14,820 and consequently should be limited to damages of $14,820. Noting that the bankruptcy proceeding was still open and the Stanbacks planned to amend the value they assigned to the present action, the district court denied UPS's motion
 
 
 [4]
 Plaintiffs McElroy and Raglin attempt the same arguments